BARR v MT BRIGHTON INCORPORATED

Docket No. 165754. Submitted June 6, 1995, at Detroit. Decided
February 20, 1996, at 9:05 A.M.

Scott W. Barr brought an action in the Livingston Circuit Court
against Mt. Brighton Incorporated, seeking damages for inju-
ries sustained in a skiing accident at the defendant's ski resort
that occurred when the plaintiff skied into a cluster of trees in
an area that the defendant considered out-of-bounds, but did
not fence, rope off, or mark as closed. The court, Daniel A.
Burress, J., denied the defendant's motion for summary disposi-
tion, which had alleged that the claim was barred pursuant to
the assumption of risk provision of the Ski Area Safety Act,
MCL 408.342(2); MSA 18.483(22)(2), finding there to be a ques-
tion of material fact. The defendant appealed by leave granted.

The Court of Appeals held:

1. The Ski Area Safety Act does not condition application of
the act's assumption of risk clause on the ski area operator's
compliance with other sections of the act. By the mere act of
skiing, the plaintiff accepted the risk that he might be injured
in a manner described by the act. The act clearly provides that
injury resulting from "trees" is an obvious and necessary
danger of skiing.

2. The defendant did not have an obligation under MCL
408.326a; MSA 18.483(6a) to mark as "closed" the trail upon
which the plaintiff was injured. This provision requires only
that the operator mark as "closed" those areas of the ski area
that normally are open but are, at the moment, closed. Here,
the defendant did not have an obligation to mark as "closed"
an area that was never "open." The plaintiff assumed no less of
a risk from trees because he was skiing on a trail never open
for skiing than if he had been skiing on a properly open trail.

3. There was no question of fact regarding whether the
cluster of trees was an obvious and necessary danger; the Ski

REFERENCES

Am Jur 2d, Amusements and Exhibitions § 98; Hotels, Motels, and
Restaurants § 117; Negligence § 1203.
Resort's liability for skier's injuries resulting from condition of ski
run or slope. 55 ALR4th 632.

Area Safety Act specifically provides that it was. The plaintiff assumed the risk of injury from collisions with trees when he engaged in the sport of skiing.

Reversed.

1. NEGLIGENCE — SKI AREA SAFETY ACT — ASSUMPTION OF RISK.

The Ski Area Safety Act provides for the assumption of risk by skiers of "obvious and necessary" dangers; injury resulting from trees is an obvious and necessary danger of skiing; a skier accepts the risk of injury both from a single tree or from a cluster of trees situated in a single area (MCL 408.342[2]; MSA 18.483[22][2]).

2. NEGLIGENCE — SKI AREA SAFETY ACT — ASSUMPTION OF RISK.

The Ski Area Safety Act does not condition application of the act's clause regarding assumption of risk by skiers on a ski area operator's compliance with other sections of the act; a skier, by the mere act of skiing, accepts the risk of being injured in a manner described by the act (MCL 408.342[2]; MSA 18.483[22][2]).

3. NEGLIGENCE — SKI AREA SAFETY ACT — OPERATOR'S DUTIES.

The Ski Area Safety Act requires a ski area operator to mark as closed those areas of the ski area that normally are open to skiing but that are, at the moment, closed; the operator does not have an obligation to mark as closed every means by which a skier can ski down a hill, including those means that are never or rarely designated as open for skiing (MCL 408.326a; MSA 18.483[6a]).

*Boyer, Churilla & Dawson, P.C.* (by *Jeffrey W. Hartkop* and *Donald M. Churilla*), for the plaintiff.

*Kaufman & Payton* (by *Donald L. Payton*), for the defendant.

Before: CAVANAGH, P.J., and MARKMAN and L. M. GLAZER,* JJ.

MARKMAN, J. Defendant appeals by leave granted the Livingston Circuit Court's order denying defendant's motion for summary disposition in

---

* Circuit judge, sitting on the Court of Appeals by assignment.

this negligence action arising from plaintiff's skiing accident. We reverse.

On December 18, 1988, plaintiff and his friend arrived at defendant's ski resort about 3:00 P.M. They skied until 5:00 P.M., when the slopes were closed for grooming. Afterwards, they resumed skiing. At the ski resort, there was a cluster of trees between the Green "Spartan" Chair and the Yellow Triple Chair ski slopes. Although defendant considered the cluster of trees as an out-of-bounds area, it did not fence or rope off the area or mark it as closed. In attempting to ski down a trail through the cluster of trees, plaintiff struck what he has described as a uniquely shaped tree. As a result, plaintiff was rendered a quadriplegic.[1]

On September 25, 1991, plaintiff commenced this action against defendant, alleging that defendant was negligent with respect to the lighting and grooming of the treed area and in failing to post warnings or mark the area as closed. On May 18, 1993, defendant filed a motion for summary disposition pursuant to MCR 2.116(C)(8) and (10) on the grounds that plaintiff failed to state a cause of action and that there were no disputed issues of material fact preventing summary disposition for defendant. In particular, defendant argued that plaintiff's claim was barred by § 22(2) of the Ski Area Safety Act, MCL 408.342(2); MSA 18.483(22)(2), which provides for the assumption of risk by skiers of "obvious and necessary" dangers. The trial court denied defendant's motion, finding there to be a question of material fact.

Defendant argues on appeal that § 22(2) bars plaintiff's claim. However, plaintiff claims that

---

[1] Plaintiff testified in a deposition that he could not remember details of the accident. He could not state whether he fell before he hit a tree, whether hitting a tree caused him to fall, or even if he actually hit a tree at all. However, both plaintiff and defendant agree that plaintiff struck a tree after skiing into this area.

defendant violated its statutory duties under the act and thus is not entitled to avail itself of the assumption of risk provision of the act.

A motion for summary disposition pursuant to MCR 2.116(C)(10) tests the factual basis underlying a plaintiff's claim. *Radtke v Everett,* 442 Mich 368, 374; 501 NW2d 155 (1993).[2] MCR 2.116(C)(10) permits summary disposition when, except with re- gard to the amount of damages, there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. *Id.* A court reviewing such a motion, therefore, must consider the pleadings, affidavits, depositions, admissions, and any other evidence in favor of the party opposing the motion, and grant the benefit of any reasonable doubt to the opposing party. *Id.* This Court reviews the trial court's grant or denial of a motion for summary disposition de novo. *Garvelink v Detroit News,* 206 Mich App 604, 607; 522 NW2d 883 (1994).

The title of the Ski Area Safety Act, MCL 408.321 *et seq.*; MSA 18.483(1) *et seq.,* provides that the act was enacted, among other reasons, "to provide for certain presumptions relative to liability for an injury or damage sustained by skiers" and "to provide for the safety of skiers, spectators, and the public using ski areas." 1962 PA 199, amended by 1981 PA 86, § 1. Ski area operators have several duties under MCL 408.326a; MSA 18.483(6a), including, in pertinent part, the duty to

> (c) Mark the top of or entrance to each ski run, slope, and trail to be used by skiers for the purpose of skiing, with an appropriate symbol indicating the relative degree of difficulty of the run, slope, or trail, using a symbols code . . . .

[2] In light of our holding, it is unnecessary to address plaintiff's claim under MCR 2.116(C)(8).

(d) Mark the top of or entrance to each ski run, slope, and trail which is closed to skiing, with an appropriate symbol indicating that the run, slope, or trail is closed . . . .

(e) Maintain 1 or more trail boards at prominent locations in each ski area displaying that area's network of ski runs, slopes, and trails and the relative degree of difficulty of each ski run, slope, and trail . . . and indicating which runs, slopes, and trails are open or closed to skiing. [MCL 408.326a(c), (d), and (e); MSA 18.483(6a)(c), (d), and (e).]

The act also states the duties of skiers, including those risks that skiers accept when engaging in the sport of skiing. MCL 408.342(2); MSA 18.483(22)(2) provides:

Each person who participates in the sport of skiing accepts the dangers that inhere in that sport insofar as the dangers are obvious and necessary. Those dangers include, but are not limited to, injuries which can result from variations in terrain; surface or subsurface snow or ice conditions; bare spots; rocks, trees, and other forms of natural growth or debris; collisions with ski lift towers and their components, with other skiers, or with properly marked or plainly visible snow-making or snow-grooming equipment.

We therefore consider plaintiff's claim in light of the Ski Area Safety Act.

Michigan courts have held that a fundamental rule of statutory construction is to ascertain the purpose and intent of the Legislature in enacting a provision. *Farrington v Total Petroleum, Inc,* 442 Mich 201, 212; 501 NW2d 76 (1993). Statutory language should be construed reasonably and the purpose of the statute should be kept in mind. *Grieb v Alpine Valley Ski Area, Inc,* 155 Mich App 484, 486; 400 NW2d 653 (1986). The first criterion

in determining intent is the specific language of the statute. *House Speaker v State Administrative Bd,* 441 Mich 547, 567; 495 NW2d 539 (1993). If the statutory language is clear and unambiguous, judicial construction is neither required nor permitted and courts must apply the statute as written. *Turner v Auto Club Ins Ass'n,* 448 Mich 22, 27; 528 NW2d 681 (1995).

In *Grieb, supra,* the plaintiff was injured when struck from behind by an unknown skier while skiing on one of the defendant's slopes. This Court concluded that the Ski Area Safety Act clearly and unambiguously provides that an injury resulting from a collision with another skier is an obvious and necessary danger assumed by skiers. *Id.* at 486.

Similarly, in *Schmitz v Cannonsburg Skiing Corp,* 170 Mich App 692; 428 NW2d 742 (1988), the plaintiff's decedent died as a result of injuries incurred when he struck, while downhill skiing, a lone tree growing on a ski slope operated by the defendant. This Court held that the plaintiff's claims of negligence and intentional nuisance were barred under the Ski Area Safety Act. *Id.* The Court found that it was clear from the plain and unambiguous wording of § 22(2) of the act that the Legislature intended to place the burden of certain risks or dangers on skiers, rather than ski resort operators. *Id.* at 695. This Court further observed:

> ·Significantly, the list of "obvious and necessary" risks assumed by a skier under the statute involves those things resulting from natural phenomena, such as snow conditions or the terrain itself; natural obstacles, such as trees and rocks; and types of equipment that are inherent parts of a ski area, such as lift towers and other such structures or snow-making or grooming equipment when properly marked. These are all conditions

that are inherent to the sport of skiing. It is safe to say that, generally, if the "dangers" listed in the statute do not exist, there is no skiing. Therefore, it is logical to construe this section of the statute as an assumption of the risk clause that renders the reasonableness of the skiers' or the ski area operator's behavior irrelevant. By the mere act of skiing, the skier accepts the risk that he may be injured in a manner described by the statute. The skier must accept these dangers as a matter of law. [*Id.* at 696.]

In *Skene v Fileccia,* 213 Mich App 1; 539 NW2d 531 (1995), this Court addressed an issue similar to the one present in the instant case in 'the context of the Roller Skating Safety Act, MCL 445.1721 *et seq.*; MSA 18.485(1) *et seq.* The statutory clause outlining the assumption of risk that roller-skaters agree to accept when they participate in roller-skating, MCL 445.1725; MSA 18.485(5), is virtually identical to that found in·the Ski Area Safety Act. *Skene, supra* at 6.

In *Skene,* the plaintiff was injured when the individual defendant ran into her while roller-skating on the rink of the codefendant roller-skating center. *Id.* at 2. The trial court granted the defendants' motion for summary disposition pursuant to MCR 2.116(C)(10) on the basis that the plaintiff assumed the risk of the dangers inherent in the sport of roller-skating. *Id.* The plaintiff argued on appeal that there were genuine issues of material fact whether the defendants breached their respective duties under the Roller Skating Safety Act and were liable. *Id.* at 4-5. This Court disagreed, finding that the plaintiff's construction of the Roller. Skating Safety Act would effectively nullify the act's assumption of risk clause. *Id.* The *Skene* Court, relying on *Grieb* and *Schmitz,* concluded that the injury resulting from the collision

was an obvious and necessary danger of roller-skating assumed by the plaintiff and that the plaintiff must bear the burden of the damages of the plaintiff's injuries. *Id.* at 6-7. The Court found that "because the [Roller Skating Safety Act] should be read in pari materia with the Ski Area Safety Act, the assumption of risk clause of the [Roller Skating Safety Act] renders the reasonableness of the roller-skaters' or the roller-skating rink operator's behavior irrelevant." *Id.* at 7.

Similarly, in the instant case, plaintiff argues that defendant violated its statutory duty to mark the treed area as closed to skiing. Plaintiff claims that defendant considered the area "out-of-bounds" and closed to skiing because of the danger posed by the cluster of trees yet failed to mark the area as closed to skiing. Plaintiff contends that as a result of defendant's noncompliance with the Ski Area Safety Act, it is not entitled to the protection provided by the act's assumption of risk clause, MCL 408.342(2); MSA 18.483(22)(2). However, the act does not condition application of the assumption of risk provision on compliance with other sections of the act. Thus, by the mere act of skiing, a skier accepts the risk that he may be injured in a manner described by the statute. *Skene, supra* at 6-7; *Schmitz, supra* at 696.

Further, we do not agree with plaintiff that defendant had an obligation under MCL 408.326a; MSA 18.483(6a) to mark as "closed" the trail upon which he was injured. There are any number of means by which a skier on top of a hill can ski down that hill. We do not construe this provision to require a ski area operator to affirmatively mark as "closed" each one of the conceivable means by which a skier can ski down a hill. The result of such an obligation would be the encirclement of the top of a hill with "closed" signs,

interrupted, perhaps, by one or two signs indicating that an open trail exists. Rather, we interpret MCL 408.326a; MSA 18.483(6a) to impose upon the ski area operator a more limited obligation. Subsection d of § 6a specifies that the operator shall

> mark the top of or entrance to each ski run, slope, and trail which is closed to skiing, with an appropriate symbol indicating that the run, slope, or trail is closed.

We construe this to require only that the operator mark as "closed" those trails in the ski area that normally are open to skiing but that are, at the moment, closed for one reason or another. We do not believe that the operator has an obligation to mark as "closed" every means by which a skier can ski down a hill, including those means that are never or rarely designated as "open" for skiing. To interpret "closed," without reference to the fact that a trail might otherwise be "open," would ironically impose less of an "assumption of risk" upon a skier who skis down an obviously dangerous trail, which has never been "open," and who confronts one of the hazards set forth in MCL 408.342(2); MSA 18.483(22)(2) than would be imposed upon a skier who confronts a similar hazard while skiing down an "open" trail. We do not believe that this is what the Legislature intended or what it set forth in the Ski Area Safety Act.[3]

Of course, a ski area operator who fails to abide by the requirements of the Ski Area Safety Act "shall be liable for that portion of the loss or damage resulting from that violation" under MCL 408.344; MSA 18.483(24), which suggests a compar-

---

[3] We believe that this interpretation is given further strength by MCL 408.342(1)(d); MSA 18.483(22)(1)(d), which imposes an obligation upon skiers to "[s]ki only in ski areas which are marked as open for skiing."

ative negligence analysis.[4] As this Court observed in *Schmitz, supra* at 694-695, the Senate's own analysis of the amended act notes that it was intended to coincide, rather than conflict, with existing comparative negligence law.[5] The Senate analysis also speaks, however, of the Legislature's concern with making the skier, rather than the ski area operator, bear the burden of damages from injuries. *Id.* at 695.[6] Thus, while a comparative negligence analysis may be applicable under certain circumstances, it is clear from the plain and unambiguous wording of the act that the Legislature intended to place the burden of certain specified risks or dangers on skiers. *Id.* at 695-696. Accordingly, the question in the instant case is whether plaintiff assumed under the Ski Area Safety Act the risk of the injuries he suffered. We believe that he did.

---

[4] The Roller Skating Safety Act contains a similar provision, MCL 445.1726; MSA 18.485(6) ("A roller skater, spectator, or operator who violates this act shall be liable in a civil action for damages for that portion of the loss or damage resulting from the violation.") However, the panel in *Skene, supra,* did not address the applicability of this section.

[5] The Senate Legislative Analysis, SB 49, Second Analysis, April 17, 1981, provides:

It is the intent of the bill to coincide, not conflict, with existing comparative negligence law. The bill simply reiterates the point that persons are liable to the extent that damages and injuries are caused by their own actions. The bill encourages all persons to seriously accept responsibility for their own safety and that of others.

[6] In *Schmitz, supra* at 695, this Court, quoting Senate Legislative Analysis, SB 49, April 17, 1981, observed:

"By clearly defining the extent to which skiers and ski area operators are liable for damages and injuries sustained in skiing accidents, the bill would help reduce the number of lawsuits in which skiers recover large sums of money for injuries that are primarily their own fault. This, in turn, should stabilize the constantly increasing insurance costs for ski area operators, which have been passed on to skiing enthusiasts through price hikes for ski lift tickets, rental equipment, waxing services, etc."

Plaintiff's injuries resulted from a collision with at least one tree. The fact that the incident took place in an area that was covered with trees and, thus, generally was more hazardous to a skier, does not change the analysis. Just as a skier accepts the risk of injury resulting from a single tree, *Schmitz, supra,* the skier similarly accepts the risk of injury resulting from a cluster of trees situated in a single area. The act clearly and unambiguously provides that injury resulting from "trees" is an obvious and necessary danger of skiing. MCL 408.342(2); MSA 18.483(22)(2). We do not believe that the proximity of several trees, or trees with an unusual shape, creates a different risk that is not covered by the act.

We do not suggest that every incident involving a tree necessarily falls under the assumption of risk clause of the act. For instance, there may be incidents involving a tree where a skier also has been subjected to dangers from which the risk of an injury is not assumed by the skier under the act, e.g., a skier's collision with a tree caused by the skier seeking to avoid improperly marked construction equipment located on a ski slope. MCL 408.326a(a); MSA 18.483(6a)(a). At that point, a ski area operator's behavior and compliance with the act would not be irrelevant. Plaintiff suggests that this is one of those cases, claiming that defendant should have marked the area as closed in order to warn skiers of the danger posed by the proximity of the trees. However, we do not believe that defendant was under any obligation to mark as "closed" an area on the hill that was never "open." The harm suffered by plaintiff thereafter was the result of one of the very dangers from which the risk of injury is specifically assumed by plaintiff under the act—trees. Plaintiff assumes no less of a risk from "trees" because he is skiing on

a trail never "open" for skiing than he would if he is skiing on a properly "open" trail.[7]

Contrary to plaintiff's assertion, there is no question of fact regarding whether the cluster of trees was an "obvious and necessary" danger. The Ski Area Safety Act explicitly provides that it is. This construction of the Ski Area Safety Act is consistent with the Legislature's intent of promoting safety, reducing ski-related litigation, and stabilizing the economic conditions of the ski resort industry. *Grieb, supra* at 487, citing Senate Legislative Analysis, SB 49, Second Analysis, April 17, 1981.[8]

Plaintiff points to *Snyder v Boyne USA, Inc,* unpublished opinion per curiam of the Court of Appeals, issued August 9, 1994 (Docket No. 154505), in support of his argument. In *Snyder,* the plaintiff was leaving the defendant's ski slopes on a slope that ran in a direct line to the ski area's western parking lot when he encountered

---

[7] We distinguish this case from one, for example, where a beginning-level skier has skied down an "expert" slope because the slope has been improperly marked as a "beginner" slope and has collided with a tree. In such a case, the ski area operator's failure to comply with its duties under the act, MCL 408.326a(c); MSA 18.483(6a)(c), would not necessarily be irrelevant. Unlike the instant case, the ski area operator's failure to comply would relate to a danger, i.e., beginners skiing down "expert" slopes, from which the risk of injury would not be assumed by a skier under the act.

[8] Plaintiff also alleged in his complaint that defendant was negligent with respect to lighting and grooming the treed area, although he did not specifically address these aspects of his claim on appeal. In any event, after a review of the record, we do not believe that there is any issue of material fact that plaintiff's injury was the result of a collision with "trees." It is reasonable to assume that the immediate area surrounding a tree may be ungroomed and we point out that in addition to the risk of injury resulting from trees, plaintiff also assumes the risk of injury that can result from variations in terrain and surface or subsurface snow or ice conditions. MCL 408.342(2); MSA 18.483(22)(2). It is similarly reasonable to assume that trees may cast shadows, thus limiting some of the lighting. There is no indication that plaintiff could not see the treed area or that a lack of lighting caused the accident. Plaintiff voluntarily left the slope on which he was skiing to enter into the treed area, in which he had in fact skied before. In doing so, he assumed the risk of colliding with a tree.

an unmarked, sudden drop-off below the base of the ski run, became airborne, crashed into the bottom of the hill, and was severely injured. This Court reversed the trial court's decision that granted summary disposition for the defendant, finding:

> If plaintiff was indeed in the ski area, it does not follow that he assumed the risk of the allegedly precipitous and extreme drop-off [toward the parking lot]. If the area was a run, slope or trail open for skiing, defendant had a duty, under MCL 408.326a(c); MSA 18.483(6a)(c), to properly mark the degree of difficulty. If the area was a run, slope or trail closed to skiing, defendant had a duty, under [MCL 408.326a(d); MSA 18.483(6a)(d)], to so mark the area. Because this was [an MCR 2.116] (C)(8) motion, the facts regarding the area's proper characterization, and its inclusion in, or exclusion from, the trail map were not developed. Conversely, if plaintiff was not in the "ski area," MCL 408.342(1)(d); MSA 18.483(22)(1)(d), relied on by the circuit court, would not apply.

We find this opinion distinguishable.[9] In *Snyder,* this Court found that, even if the plaintiff was in the ski area,[10] it did not follow that he assumed the risk of the "allegedly precipitous and extreme drop-off." Implicit in that decision was this Court's rejection of the trial court's finding that the injuries resulted from variations in the terrain, one of the risks specifically identified under the Ski Area Safety Act as "obvious and necessary" and, thus,

---

[9] Because it is an unpublished opinion, *Snyder* is not precedentially binding. MCR 7.215(C).

[10] While the parties refer to the area in question as "out of bounds," they do not appear to argue that this area was outside the "ski area," MCL 408.322(f); MSA 18.483(2)(f). Instead, defendant argues that the assumption of risk clause covers the instant action while plaintiff claims that defendant cannot avail itself of this protection because of its failure to comply with its duties under the act.

assumed by skiers. If this Court had found, instead, that the injuries resulted from variations in the terrain, it presumably would have found that the skier assumed the risk of injury resulting from these variations. Similarly, in the instant case, we find that plaintiff's injuries resulted from trees. Accordingly, he assumed this risk of injury under the act.

Plaintiff has suffered a tragic and deeply unfortunate accident. However, under the Ski Area Safety Act, he assumed the risk of such injury when he engaged in the sport of skiing. Accordingly, the court erred in denying the defendant's motion for summary disposition.

Reversed.