*In re* HUISMAN

Docket No. 206872. Submitted April 21, 1998, at Grand Rapids. Decided June 19, 1998, at 9:10 A.M.

Anthony and Deborah Huisman petitioned the Juvenile Division of the Ottawa County Probate Court for the termination of the parental rights of Michelle Huisman, Anthony Huisman's former wife, to J.H., the son born of Anthony's marriage to Michelle. At the time the petition was filed, Anthony had sole legal and physical custody of J.H. pursuant to a divorce decree of the Ottawa Circuit Court, and Michelle was in prison serving an eight- to twenty-five-year sentence after having pleaded guilty of assaulting J.H. with intent to murder. The petitioners alleged that the respondent had attempted to murder J.H. while he was in her care and that it was in J.H.'s best interests that respondent's parental rights be terminated. The probate court, Mark A. Feyen, J., held that the petitioners had standing to file a petition to terminate parental rights and, after hearing testimony concerning the child's best interests, terminated the respondent's parental rights. The respondent appealed.

The Court of Appeals *held*:

1. Section 19b(1) of the Juvenile Code, MCL 712A.19b(1); MSA 27.3178(598.19b)(1), provides that a petition to terminate parental rights may be brought by a custodian of the child in question. Because the Juvenile Code does not define "custodian," the term must be accorded its plain and ordinary meaning within the context of the statute. The plain and ordinary meaning of custodian certainly encompasses a custodial parent, and there is nothing in the Juvenile Code to suggest that the Legislature intended that the term have a narrow or technical meaning that would exclude a custodial parent. Anthony Huisman, as the parent of the child having legal physical custody of the child pursuant to the order of the circuit court, had standing under the Juvenile Code to file the petition to terminate parental rights.

2. A probate court may properly terminate the parental rights of just one parent. Accordingly, the court could properly terminate the respondent's rights, even though it did not terminate the parental rights of petitioner Anthony Huisman.

3. Although § 51(b) of the Adoption Code, MCL 710.51(6); MSA 27.3178(555.51)(6), provides a procedure for termination of parental rights in which the parent having legal custody of a child subsequently marries and the custodial parent's new spouse seeks to adopt the child, § 41(1) of the Adoption Code, MCL 710.41(1); MSA 27.3178(555.41)(1), clearly contemplates that a termination of parental rights preceding an adoption can be under either the Adoption Code or the Juvenile Code. Accordingly, the fact that the termination of the respondent's parental rights may have been for the purpose of allowing petitioner Deborah Huisman's adoption of J.H. does not preclude termination of the respondent's parental rights pursuant to the provisions of the Juvenile Code.

4. The probate court's finding that a statutory basis for the termination of the respondent's parental rights existed and that it was in the child's best interests to terminate those rights was supported by the evidence on the record.

Affirmed.

1. PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS — STANDING.

A custodial natural parent who has legal and physical custody of a child pursuant to a decree of divorce from the other natural parent has standing to petition for termination of the noncustodial parent's parental rights pursuant to the provisions of the Juvenile Code (MCL 712A.19b[1]; MSA 27.3178[598.19b][1]).

2. PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS — PROBATE COURT — JUVENILE CODE.

The provisions of the Juvenile Code relating to the termination of parental rights allow a probate court to terminate the parental rights of just one parent; the Juvenile Code does not require that the rights of both parents be terminated (MCL 712A.19b[1]; MSA 27.3178[598.19b][1]).

3. PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS — ADOPTION.

Termination of the parental rights of a former spouse for the purpose of allowing the present spouse of a custodial parent to adopt a child of the former marriage may be sought under the provisions of either the Juvenile Code or the Adoption Code (MCL 710.41[1], 710.51[6], 712A.19b[1]; MSA 27.3178[555.41][1], 27.3178[555.51][6], 27.3178[598.19b][1]).

*Knoll, Persinger, Knoll & Bedevia, P.C.* (by *Richard D. Persinger*), for the petitioners.

*Daniel J. Fojtik,* for the respondent.

Before: CORRIGAN, C.J., and HOEKSTRA and YOUNG, JR., JJ.

YOUNG, JR., J. Respondent Michelle Huisman appeals as of right from the probate court's order terminating her parental rights to her minor son, J.H. The principal issue in this case is whether respondent's former husband and J.H.'s natural father, petitioner Anthony Huisman, who has sole legal and physical custody of J.H., and Mr. Huisman's new wife, petitioner Deborah Huisman, had standing to seek termination of respondent's parental rights under § 19b of the Juvenile Code (chapter 12A of the Probate Code), MCL 712A.19b; MSA 27.3178(598.19b). We hold that Mr. Huisman did have standing to file a termination petition. Moreover, we find no error in the probate court's decision to terminate respondent's parental rights. We therefore affirm the decision of the probate court.

### I. UNDERLYING FACTS AND PROCEDURAL HISTORY

In March 1996, after five years of marriage, Anthony Huisman and respondent were divorced. Apparently, respondent had emotional problems during the marriage, including problems with uncontrolled jealousy. Respondent was awarded physical custody of the parties' minor son, J.H., who was born on February 13, 1993. On July 9, 1996, after J.H. left for a visitation with Mr. Huisman, respondent dissolved into a glass of milk a large quantity of Novaine, an antipsychotic drug that had been prescribed for respondent for treatment of obsessive-compulsive disorder. Respondent gave the tainted milk to J.H. when he returned home.

Respondent admitted that she decided to kill J.H. to keep him away from his father. Respondent put J.H. to bed around 8:00 or 9:00 P.M., with the intent that he die in his sleep. However, J.H. awoke at 3:00 A.M. complaining of a stomachache. Respondent gave him apple juice and helped him vomit. She then lay down with J.H. on the couch and fell asleep. At 6:30 A.M., respondent finally decided to seek help. After speaking with her stepmother and then poison control, respondent eventually took J.H. to the emergency room. There, she lied to emergency room personnel, telling them that J.H. had gotten into her medication by himself. J.H. remained hospitalized for twenty-four hours, and, after his release, began living with Mr. Huisman and Deborah Huisman.

In January 1997, respondent pleaded guilty of assaulting J.H. with the intent to murder. She was sentenced to eight to twenty-five years' imprisonment. On January 3, 1997, the Ottawa Circuit Court, having retained jurisdiction in the divorce matter, awarded Mr. Huisman sole legal and physical custody of J.H. with no visitation rights to respondent. Ottawa County Children's Protective Services subsequently closed its investigation of the matter when it became clear that respondent no longer had access to J.H. On May 21, 1997, apparently because Deborah Huisman had been unsuccessful in adopting J.H. under § 51 of the Adoption Code, MCL 710.51(6); MSA 27.3178(555.51)(6),[1] Mr. Huisman and Deborah Huis-

---

[1] MCL 710.51(6); MSA 27.3178(555.51)(6) provides:

> If the parents of a child are divorced . . . and if the parent having legal custody of the child subsequently marries and that parent's spouse petitions to adopt the child, the court upon notice and hear-

man filed a petition under the Juvenile Code for termination of respondent's parental rights, citing as the basis for the court's jurisdiction MCL 712A.2(b)(1) and (2); MSA 27.3178(598.2)(b)(1) and (2).[2] The petition specifically alleged that respondent had attempted to murder J.H. while he was in her care and custody and that termination of respondent's parental rights would be in his best interests. The probate court authorized the petition and, following an adjudicative hearing, found the allegations to be true and assumed jurisdiction over J.H.

---

ing may issue an order terminating the rights of the other parent if both of the following occur:

(a) The other parent, having the ability to support, or assist in supporting, the child, has failed or neglected to provide regular and substantial support for the child or if a support order has been entered, has failed to substantially comply with the order, for a period of 2 years or more before the filing of the petition.

(b) The other parent, having the ability to visit, contact, or communicate with the child, has regularly and substantially failed or neglected to do so for a period of 2 years or more before the filing of the petition.

[2] At the time the petition was filed, MCL 712A.2(b); MSA 27.3178(598.2)(b), in relevant part, authorized the juvenile division of the probate court to assume jurisdiction over any juvenile under 18 years of age found within the county:

(1) Whose parent or other person legally responsible for the care and maintenance of the juvenile, when able to do so, neglects or refuses to provide proper or necessary support, education, medical, surgical, or other care necessary for his or her health or morals, who is subject to a substantial risk of harm to his or her mental well-being, who is abandoned by his or her parents, guardian, or other custodian, or who is without proper custody or guardianship.
. . .

(2) Whose home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, guardian, or other custodian, is an unfit place for the juvenile to live in.

Effective January 1, 1998, § 2 establishes the same jurisdiction in the family division of the circuit court.

A dispositional hearing was subsequently held on September 9, 1997. At the hearing, respondent argued, among other things, that petitioners lacked standing to seek termination of respondent's parental rights under the Juvenile Code. The probate court disagreed, stating in relevant part:

> [Section 39 of the Adoption Code, MCL 710.39; MSA 27.3178(555.39)], it seems to me, clearly recognizes the situation in which an adoption petition can be filed and parental rights can be terminated thus paving the way for an adoption, and the parental rights can be terminated under either section 51[(6)] of the Adoption Code . . . or the Juvenile Code which has different legal criteria . . . .
>
> . . . [G]iven the reference in . . . the Adoption Code which seems to permit persons seeking an adoption to file a petition under the Juvenile Code, and given the absence of any prohibition in the Juvenile Code . . . the court has to hold that the present action is appropriately broad and it's permissible . . . .

Having heard conflicting testimony concerning J.H.'s best interest, the court found that termination of respondent's parental rights was justified under MCL 712A.19b(3)(b)(i);    MSA    27.3178(598.19b)(3)(b)(i) (physical    injury    caused    by    parent),    MCL 712A.19b(3)(g);    MSA 27.3178(598.19b)(3)(g)    (failure to provide proper care and custody and there exists no reasonable likelihood of change within a reasonable amount of time), MCL 712A.19b(3)(h);    MSA 27.3178(598.19b)(3)(h)    (imprisonment for more than two    years),    and    MCL    712A.19b(3)(j);    MSA 27.3178(598.19b)(3)(j)    (reasonable likelihood of harm if child is returned to parent's home), and also "because of the desirability of permitting [adoption] under the[] circumstances." Accordingly, the probate court terminated respondent's parental rights and

ordered that J.H. be made "available for adoption by his father and stepmother."

## II. STANDING

Central to the question whether petitioners had standing to seek termination of respondent's parental rights under the Juvenile Code is MCL 712A.19b(1); MSA 27.3178(598.19b)(1), which provides as follows:

> Except as provided in subsection (4), if a child remains in foster care in the temporary custody of the court . . . or if a child remains in the custody of a guardian or limited guardian, upon petition of *the prosecuting attorney . . . or of the child, guardian, custodian, concerned person as defined in subsection (6), agency, or the child's ombudsman pursuant to Section 7 of the children's ombudsman act,* . . . the court shall hold a hearing to determine if the parental rights to a child should be terminated . . . . [Emphasis added.]

Respondent argues that MCL 712A.19b(1); MSA 27.3178(598.19b)(1) expressly limits the class of persons entitled to file a petition for termination of parental rights, and that it does not authorize the filing of a petition either by a natural parent (Mr. Huisman) or by a "stepparent" (Deborah Huisman). By contrast, petitioners argue that Mr. Huisman qualifies under the statute as a "custodian" because he has sole legal and physical custody of J.H., and that Deborah Huisman is also J.H.'s "custodian" because she provides care on a daily basis. We do not reach or decide the question of Deborah Huisman's standing to seek termination of respondent's parental rights under § 19b(1) because we hold that Mr. Huisman had standing as J.H.'s "custodian," and, therefore, that the termination petition was properly entertained.

The meaning of the statutory term "custodian" is a question of law subject to review de novo. *Cardinal Mooney High School v Michigan High School Athletic Ass'n*, 437 Mich 75, 80; 467 NW2d 21 (1991). The primary goal of statutory interpretation is to ascertain and give effect to the intent of the Legislature in enacting a provision. *Farrington v Total Petroleum, Inc*, 442 Mich 201, 212; 501 NW2d 76 (1993). The starting point in determining legislative intent is the specific language of the statute. *House Speaker v State Administrative Bd*, 441 Mich 547, 567; 495 NW2d 539 (1993). Courts may not speculate about the probable intent of the Legislature beyond the words expressed in the statute. *Detroit Edison Co v Spartan Express, Inc*, 225 Mich App 629, 632; 572 NW2d 39 (1997). If the statutory language is clear and unambiguous, judicial construction is neither required nor permitted, and courts must apply the statute as written. *Barr v Mt Brighton Inc*, 215 Mich App 512, 516-517; 546 NW2d 273 (1996).

Section 19b(1) provides that a child's "custodian" may file a petition for termination of parental rights. Because the Juvenile Code does not define "custodian," we must accord the term its "plain and ordinary meaning within the context of the statute." *Shanafelt v Allstate Ins Co*, 217 Mich App 625, 638; 552 NW2d 671 (1996); MCL 8.3a; MSA 2.212(1). In doing so, we may resort to dictionary definitions. *Lumley v Univ of Michigan Bd of Regents*, 215 Mich App 125, 130; 544 NW2d 692 (1996). *Random House Webster's College Dictionary* (1995) defines "custodian" as "a person who has custody; keeper; guardian." *Random House* defines "custody," in turn, as: "1. keeping; guardianship; care. . . . 4. (esp. in a divorce)

the right of determining the residence, care, schooling, etc., of a child or children." Black's Law Dictionary (6th ed) similarly provides that "custodian" is the "[g]eneral term to describe anyone who has charge or custody . . . ."

At the outset, we acknowledge that the comprehensive list of parties authorized to file a termination petition under § 19b(1) does not include the term "parent." However, given the Legislature's use of the apparently broad term "custodian" in § 19b(1), we can discern no statutory basis for excluding a *custodial* parent from filing a termination petition under the Juvenile Code to terminate the rights of the other natural parent.[3] The plain and ordinary meaning of "custodian" certainly encompasses a custodial parent, and none of the other Juvenile Code provisions appear to suggest otherwise.[4] Nor are we aware of any provision in the Juvenile Code in which the Legislature ascribes a narrow or technical meaning to the term "custodian." In the absence of such guidance from the Legislature, we are obligated to construe

---

[3] We do assume without deciding that, in light of the fact that the term "parent" is omitted from § 19(b), a *noncustodial* parent is not authorized to file a petition seeking termination of the custodial parent's rights.

[4] The statute provides no contextual clues concerning the intended definition of "custodian" as used in § 19b(1) because of the inconsistent manner in which the terms "parent" and "custodian" are used throughout the Juvenile Code. While some code provisions refer to "parent" and "custodian" together in a manner suggesting they are to be assigned different meanings, see, e.g., MCL 712A.14(2); MSA 27.3178(598.14)(2) ("parents, guardian, or custodian"), and MCL 712A.13a(3); MSA 27.3178(598.13a)(3) ("juvenile's parents or the juvenile's guardian or custodian"), the Legislature uses the terms "parent" and "custodian" in other provisions in a manner suggesting that those terms are not mutually exclusive. See, e.g., MCL 712A.17(3); MSA 27.3178(598.17)(3) ("parent, guardian, or other custodian").

"custodian" in a nonstrained, nontechnical manner and apply the statute as written. *Barr, supra.*

In addition to being consistent with the plain and ordinary meaning of § 19b(1), we also believe that a broad reading of "custodian" comports with our statutory obligation to liberally construe the Juvenile Code to ensure that each child coming within the probate court's jurisdiction receives the care, guidance, and control conducive to the child's welfare and the best interest of the state. MCL 712A.1; MSA 27.3178(598.1); *In re Jagers*, 224 Mich App 359, 362; 568 NW2d 837 (1997).

Respondent relies principally on *In re Swope*, 190 Mich App 478; 476 NW2d 459 (1991), in support of her assertion that parents as a class do not have standing to file a petition for termination of parental rights under the Juvenile Code. However, we find *Swope* to be inapposite. In *Swope*, this Court held that the petitioners, the minor child's *adoptive* parents, lacked standing to petition for the termination of their *own* parental rights. The petitioners had asked the probate court to terminate their parental rights after the minor child made two suicide attempts, ran away from home several times, and engaged in delinquent behavior. *Id.* at 479. At the time the termination petition was filed, the minor child, who had been made a ward of the court, was residing in a foster home. *Id.* In upholding the probate court's dismissal of the petition, the *Swope* Court reasoned:

> [T]he specific language of the statute requires that a petition to terminate parental rights be brought by the prosecuting attorney, child, guardian, custodian, or agency. When a statute designates the persons who may bring a claim, only the persons so designated have the right to bring such

an action. 59 Am Jur 2d, Parties, § 22, p 409. Our conclusion that parents lack standing to petition for termination is consistent with the intent of the Legislature, because the statute was clearly enacted for the protection of children, rather than for the convenience of parents. [*Id.* at 480-481.]

While *Swope* appears at first glance to suggest that all "parents" lack standing to petition for termination, we do not believe that *Swope* can be read so broadly because, as stated, the minor in *Swope* was residing in a foster home and therefore was not in the petitioners' "custody" at the time the termination petition was filed. Hence, this Court in *Swope* simply was not faced with the issue presented in this case.

Respondent also makes an argument similar to that addressed by this Court in *In re Marin*, 198 Mich App 560, 565; 499 NW2d 400 (1993): that there is no need to terminate parental rights of one parent where the child remains in the care and custody of the other parent. However, the *Marin* Court rejected this argument and found that "the Legislature envisioned and intended that the probate court could terminate the parental rights of just one parent." *Id.* at 566; see also *In re SR*, 229 Mich App 310; 581 NW2d 291 (1998). Moreover, despite respondent's contrary claim, we do not believe that the holding in *Marin* can be avoided simply because the termination petition in that case was filed by the Department of Social Services rather than the custodial parent.

Respondent finally argues that it was categorically improper for Mr. Huisman to seek termination of respondent's parental rights under the Juvenile Code because the Adoption Code contains a specific termination provision for cases such as this one in which the parent having legal custody of the child subse-

quently marries and that parent's spouse seeks to adopt the child ("stepparent adoption"). MCL 710.51(6); MSA 27.3178(555.51)(6). We find respondent's argument to be without merit.

It is clear that the Adoption Code contemplates termination of a natural parent's rights either under its provisions *or* under the provisions of the Juvenile Code. By way of example, the Adoption Code provides that "a child shall not be placed in a home for the purpose of adoption until an order terminating parental rights has been entered *pursuant to this chapter or chapter XIIA* [MCL 712A.1 *et seq.*; MSA 27.3178(598.1) *et seq.*]." MCL 710.41(1); MSA 27.3178(555.41)(1) (emphasis added).[5] We are not convinced that otherwise proper termination proceedings initiated under the Juvenile Code should be invalidated merely because adoption by a stepparent is thus facilitated. To the contrary, we conclude and hold that the Juvenile Code merely provides an alternate method for terminating parental rights in appropriate cases and in accordance with the Juvenile Code's specific provisions.[6]

---

[5] Actually, the Adoption Code cross-references the Juvenile Code in a number of sections. See, e.g., MCL 710.27a(4); MSA 27.3178(555.27a)(4), MCL 710.31(1), (2); MSA 27.3178 (555.31)(1), (2), MCL 710.39(2), (3); MSA 27.3178(555.39)(2), (3).

[6] We acknowledge the Supreme Court's admonition in *In re Mathers*, 371 Mich 516, 535; 124 NW2d 878 (1963), that "[t]he use of neglect proceedings to circumvent the adoption code cannot be countenanced." However, we do not believe that this brief, conclusory statement furnishes any guidance in resolving the issue presented in this case because the relevant provisions of the Adoption Code and the Juvenile Code that we apply here either did not exist at the time *Mathers* was decided or have since been substantially reworked.

III. TERMINATION OF RESPONDENT'S PARENTAL RIGHTS

Having determined that Mr. Huisman, as J.H.'s "custodian," had standing to file a termination petition under MCL 712A.19b(1); MSA 27.3178(598.19b) (1), we must now determine whether the juvenile court erred in terminating respondent's parental rights under MCL 712A.19b(3)(b)(i); MSA 27.3178(598.19b) (3)(b)(i) (physical injury caused by parent), MCL 712A.19b(3)(g); MSA 27.3178(598.19b)(3)(g) (failure to provide proper care and custody and there exists no reasonable likelihood of change within a reasonable amount of time), MCL 712A.19b(3)(h); MSA 27.3178(598.19b)(3)(h) (imprisonment for more than two years), and MCL 712A.19b(3)(j); MSA 27.3178(598.19b)(3)(j) (reasonable likelihood of harm if child is returned to parent's home).

We review a trial court's decision regarding termination in its entirety for clear error. *In re Hall-Smith*, 222 Mich App 470, 473; 564 NW2d 156 (1997). Once a statutory ground for termination has been met by clear and convincing evidence, the parent against whom termination proceedings have been brought has the burden of going forward with some evidence that termination is clearly not in the child's best interest. *Id.* at 473. If no such showing is made and a statutory ground for termination has been established, the trial court is without discretion; it must terminate parental rights. *Id.* at 472.

Respondent, largely without citation of authority, argues that the juvenile court misapplied subsections 3(b)(i), 3(g), 3(h), and 3(j). However, even assuming arguendo that there is some question about the applicability of one or more of these statutory grounds, we have no doubt that subsection 3(g) (failure to provide

proper care and custody and there exists no reasonable likelihood of change within a reasonable amount of time) was met by clear and convincing evidence. Respondent attempted to murder J.H., she is currently serving an eight- to twenty-five-year prison sentence, and there was evidence that respondent's serious emotional problems contributing to her actions will continue to exist. Cf. *In re Vasquez*, 199 Mich App 44; 501 NW2d 231 (1993); *In re Perry*, 193 Mich App 648; 484 NW2d 768 (1992); *In re McIntyre*, 192 Mich App 47; 480 NW2d 293 (1991).[7] This subsection alone provides a sufficient basis for terminating respondent's parental rights. MCL 712A.19b(3); MSA 27.3178(598.19b)(3).[8] Finally, while respondent presented some evidence that termination was not in J.H.'s best interest, we have reviewed in its entirety the record and the probate court's decision to terminate respondent's parental rights and find no clear error in that decision. *Hall-Smith, supra* at 472.

Affirmed.

---

[7] We note that both *Perry* and *McIntyre* applied former subsection 3(d), which is now subsection 3(g).

[8] We reject as unfounded respondent's contention that subsection 3(g) does not apply because she provided proper care and custody by agreeing after the poisoning incident to J.H.'s placement in the custody of Mr. Huisman.