# STATE OF MICHIGAN

# COURT OF APPEALS

In re S. R. ASHER, Minor.

UNPUBLISHED
October 9, 2018

No. 342957
Baraga Circuit Court
Family Division
LC No. 2017-001379-NA

Before: MURPHY, P.J., and SAWYER and SWARTZLE, JJ.

PER CURIAM.

Respondent-father[1] appeals by right the trial court's order removing his infant daughter, SRA, from her mother, HA's, custody under MCL 712A.2(b)(1) (abandonment) and MCL 712A.2(b)(2) (unfit environment for the child). We affirm.

## I. BACKGROUND

Respondent and HA were in a romantic relationship and lived together until four months before SRA's birth when respondent was arrested for violating the conditions of his probation. Respondent was later convicted of being a felon in possession of a firearm and remained in prison throughout the trial court proceedings. Respondent testified that, prior to his arrest, he used cocaine, opiates, and oxycodone with HA while she was pregnant. Indeed, HA tested positive for cocaine, opiates, and oxycodone just months before SRA's birth. When SRA was born, she tested positive for marijuana, and tests confirmed that she was exposed to the substance in utero.

A petition for jurisdiction over SRA, who is of Native American heritage, was originally filed by the Keweenaw Bay Indian Community (KBIC) in the tribe's tribal court in May 2017. HA admitted to a KBIC social services worker that she had used marijuana and methamphetamine, and HA voluntarily placed SRA with her maternal grandparents under a power of attorney. Despite the provision of several KBIC services, HA continued to test positive for amphetamine, methamphetamine, marijuana, and buprenorphine, and she failed to register for

---

[1] SRA's mother, HA, was also a respondent in this case, but she is not participating in this appeal.

-1-

inpatient substance abuse treatment as instructed. Eventually, KBIC sought dismissal of the petition because the tribe determined that SRA was not eligible to be enrolled as a member of the tribe.

Shortly thereafter, the Department of Health and Human Services (DHHS) filed a petition against respondent and HA in Baraga County Circuit Court for jurisdiction over SRA. The petition alleged that "the home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of the parent, guardian, nonparent adult, or other custodian, is an unfit place for the child(ren) to live." DHHS alleged that it was contrary to SRA's welfare to remain in the home because "[HA] continues to use methamphetamine and has recently tested positive for methamphetamine . . . . [HA] is avoiding inpatient treatment as she doesn't feel she needs to go now." As efforts made to prevent the removal of SRA, DHHS listed, in addition to services provided to HA during the pendency of the proceedings before the tribal court, that HA met with "Dr. Lehtinen at UP Health System of Marquette" and was provided "[r]andom drug screens through DHHS." The petition did not include details of any services provided to respondent.

The trial court held a preliminary hearing during which a DHHS social worker testified that DHHS sought removal due to HA's continuous drug use and respondent's imprisonment. When asked about the home environment of SRA's grandparents, with whom the child was living, the worker indicated that "everything seems safe and up to code," and that the grandparents were attempting to become licensed foster parents. SRA's guardian ad litem testified that she met with SRA at her grandparents' home, and that the child appeared to be happy, healthy, and safe. At the hearing, the trial court found that reasonable efforts were made to prevent the removal of the child and ordered that SRA be removed from HA and be put under the jurisdiction of DHHS. SRA continued to live with her maternal grandparents.

HA subsequently admitted to the allegations outlined in the removal petition. The trial court authorized the petition against respondent and HA, stating that custody of SRA by HA would present a substantial risk of harm and that respondent was unable to provide a fit home for SRA or care for her due to his incarceration. Following trial on the removal petition, the trial court found that it could take jurisdiction over SRA under MCL 712A.2(b)(1) and (b)(2). Respondent sought parenting time with SRA to be held in a secure location within the prison. After hearing testimony that visiting such a facility would be detrimental to SRA, the trial court denied defendant's request.

This appeal followed.

## II. ANALYSIS

*Reasonable Services.* Respondent first argues that the trial court erred in determining that DHHS provided reasonable services to him before taking jurisdiction over SRA. We disagree. The trial court did not err by finding that HA—the custodial parent—was provided reasonable services before it took jurisdiction over the child. Indeed, SRA was provided with significant substance-abuse services by both DHHS and KBIC. Because respondent was never a custodial parent to SRA, however, he was not entitled to services to prevent her removal from HA's home.

Respondent first argues that, under *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010), the trial court was required to provide services to him prior to removal. *In re Mason*, 486 Mich at 146, 156-160, requires DHHS to provide services to an incarcerated parent before terminating his or her parental rights. See also MCL 712A.18f; MCL 712A.19a. Because respondent's parental rights were not terminated, his reliance on *In re Mason* is misplaced.

Second, respondent cites MCR 3.965(C)(4) in support of his argument that DHHS should have provided him services before removing SRA from her mother's care. MCR 3.965(C)(4), in pertinent part, refers to the removal of the child, and the efforts required to prevent removal, from a *custodial* guardian or parent:

> *Reasonable Efforts Findings.* Reasonable efforts findings must be made. In making the reasonable efforts determination under this subrule, the child's health and safety must be of paramount concern to the court. When the court has placed a child with someone other than the *custodial* parent, guardian, or legal custodian, the court must determine whether reasonable efforts to prevent the removal of the child have been made or that reasonable efforts to prevent removal are not required. [Emphasis added.]

The terms "custodial" and "custodian" are not defined in the Juvenile Code. See *In re Huisman*, 230 Mich App 372, 379; 584 NW2d 349 (1998), overruled in part on other grounds by *In re Trejo Minors*, 462 Mich 341; 612 NW2d 407 (2000). The plain and ordinary meaning of "custodian," however, is "a person who has custody; keeper; guardian," and "custody, in turn, means . . . keeping; guardianship; care." *In re Huisman*, 230 Mich App at 379-380 (cleaned up). In this case, it is apparent from the record that respondent has been imprisoned since before SRA's birth, had never met the child, and did not provide any support for her. Accordingly, respondent was not SRA's custodian and DHHS was not required to provide reasonable efforts to "reunify" him with SRA prior to her removal at the initial stage of these proceedings.

*Statutory Grounds to Assume Jurisdiction.* Respondent next argues that petitioner did not establish statutory grounds for the trial court to assume jurisdiction over SRA. "We review the trial court's decision to exercise jurisdiction for clear error in light of the court's factual findings." *In re BZ*, 264 Mich App 286, 295; 690 NW2d 505 (2004). "To properly exercise jurisdiction, the trial court must find that a statutory basis for jurisdiction exists." *Id*. "Jurisdiction must be established by a preponderance of the evidence." *Id*. Once the trial court assumes jurisdiction over a child, the parties enter the dispositional phase, during which the trial court is to determine what measures it will take with respect to a child properly within its jurisdiction. See *In re Sanders*, 495 Mich 394, 406; 852 NW2d 524 (2014).

The trial court based its assumption of jurisdiction over SRA on its findings under MCL 712A.2(b)(1) and MCL 712A.2(b)(2). Taking the second ground first, MCL 712A.2(b)(2) provides that the trial court has jurisdiction in proceedings concerning a juvenile found within the county "[w]hose home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, guardian, nonparent adult, or other custodian, is an unfit place for the juvenile to live in."

HA abused drugs during her pregnancy, and she tested positive for drugs after SRA was born. Respondent admitted that he had abused drugs with HA while they lived together before he was imprisoned, despite the fact that he knew she was pregnant. Because she could not adequately address her substance-abuse issues, HA placed SRA with her grandparents under a power of attorney, which, as the trial court noted, was only temporary and could be revoked at any time by HA. See MCL 700.5103; see also *In re Martin*, 237 Mich App 253, 257; 602 NW2d 630 (1999). This Court has held that a respondent's execution of a power of attorney does not prevent jurisdiction because a child could be returned to an unfit environment at a respondent's whim, and that a power of attorney does not provide the permanency to a child that an appointed guardian provides. *In re Martin*, 237 Mich App at 257. In this case, it is clear that, if HA revoked the power of attorney, SRA would be returned to a home riddled with substance abuse, in the care of a parents who abused substances while the child was in utero. Accordingly, the court did not clearly err by finding that jurisdiction was proper under MCL 712A.2(b)(2). Because only one statutory ground need be proven for the trial court to assume jurisdiction, we need not determine whether the trial court erred by assuming jurisdiction under MCL 712A.2(b)(1). *In re BZ*, 264 Mich App at 295.

*Parenting Time*. Finally, respondent argues that the trial court abused its discretion in denying his motion for parenting time under MCL 712A.13(a)(13). Following a child's removal, a parent in a child protective proceeding is generally entitled to parenting time under MCL 712A.13a(13). Parenting time may be suspended or foreclosed, however, if exigent circumstances exist or if parenting time "may be harmful to the juvenile's life, physical health, or mental well-being." MCL 712A.13a(13).

A DHHS social worker testified that the prison environment would be a jarring setting for SRA and that she could not "in good conscience" testify that visitation with respondent in prison would be in the child's best interests. The trial court credited this testimony in making its parenting-time determination and we must defer to its determination of credibility. *Shann v Shann*, 293 Mich App 302, 305; 809 NW2d 435 (2011). Because the evidence showed that parenting time with respondent in a prison setting could be harmful to SRA's well-being, the trial court did not abuse its discretion by denying respondent's request for parenting time.

Affirmed.

/s/ William B. Murphy
/s/ David H. Sawyer
/s/ Brock A. Swartzle

-4-