IN THE MATTER OF COLON

Docket No. 75865. Submitted December 11, 1984, at Detroit.—Decided
    August 19, 1985.

Petitioner, Mary Lou Rodriguez, and respondent, Fran Esteban
    Colon, II, were divorced in 1979. Custody of their two children,
    Christina M. Colon and Fran Esteban Colon, III, was given to
    petitioner, and respondent was ordered to pay child support
    and was granted visitation. Petitioner remarried and, in 1982,
    petitioned the Wayne Probate Court to terminate respondent's
    parental rights so that her husband could adopt the children.
    Respondent requested a jury trial, which was denied. At the
    hearing, testimony revealed that the judgment of divorce re-
    quired respondent to pay $50 per week in child support. As of
    the time of the hearing, respondent had paid a total of $920
    and was $10,265.50 in arrears. Respondent had visited his
    children three to four times each in 1979 and 1980 and two to
    three times each in 1981 and 1982. He had sent Christmas gifts
    in 1979. The probate court, Thomas A. Maher, J., found that
    respondent had regularly and substantially failed to support or
    visit his children for two years or more preceding his incarcera-
    tion and entered an order terminating respondent's parental
    rights. Respondent appealed. *Held:*

    1. Respondent's first claim was that the probate court com-
    mitted error requiring reversal by shifting the burden of proof
    to him to show an inability to provide support. Respondent
    assumed that his ability to support was a relevant factor under
    the statute governing stepparent adoptions. A stepparent who
    wishes, pursuant to the Adoption Code, to adopt a child for
    whom there is a support order against the natural parent
    whose parental rights the stepparent seeks to terminate need
    prove only that there was substantial failure to comply with
    the support order for two years prior to the filing of the

REFERENCES FOR POINTS IN HEADNOTES
[1] Am Jur 2d, Statutes § 142 *et seq.*
[2-4] Am Jur 2d, Adoption § 83 *et seq.*
    Validity of state statute providing for termination of parental
    rights. 22 ALR4th 774.

petition. He need not also prove the natural parent's ability to comply with the order.

2. Respondent next argued that the evidence did not sustain the court's finding that he had the "ability to visit, contact, or communicate with" the children, as required by the Adoption Code. The evidence was sufficient to sustain the court's findings under either the *de novo* review standard or the clearly erroneous standard.

3. The court did not err in denying respondent a jury trial. There is no right to a jury trial at a hearing to terminate parental rights under the Adoption Code.

Affirmed.

1. STATUTES — JUDICIAL CONSTRUCTION.

A statute which is unambiguous on its face is not susceptible of interpretation or construction of its terms; however, if an ambiguity exists it is the duty of the court to give effect to the intent of the Legislature, looking to the object of the statute and applying a reasonable construction which best accomplishes the statute's purpose.

2. ADOPTION — ADOPTION CODE — TERMINATION OF PARENTAL RIGHTS — PARENT AND CHILD — CHILD SUPPORT.

A stepparent who wishes, pursuant to the Adoption Code, to adopt a child for whom there is a support order against the natural parent whose parental rights the stepparent seeks to terminate need prove only that there was substantial failure to comply with the support order for two years prior to the filing of the petition; he need not also prove the natural parent's ability to comply with the order (MCL 710.51[6][a]; MSA 27.3178[555.51][6][a]).

3. ADOPTION — ADOPTION CODE — TERMINATION OF PARENTAL RIGHTS — CONSTITUTIONAL LAW.

A petitioner who seeks to terminate parental rights under the Adoption Code must show by clear and convincing evidence that the termination is warranted, since a parent's right to the custody of his children is a fundamental liberty guaranteed by the Fifth and Fourteenth Amendments (US Const, Am V, XIV).

4. ADOPTION — ADOPTION CODE — TERMINATION OF PARENTAL RIGHTS — JURY TRIAL — CONSTITUTIONAL LAW.

There is no right to a jury trial at a hearing to terminate parental rights under the Adoption Code (Const 1963, art 1, § 14; MCL 710.51[6]; MSA 27.3178[555.51][6]).

Juvenile Defender Office (by *Thomas M. Harp*), for the minors.

*Stone & Richardson, P.C.* (by *Horace E. Stone*), for Fran E. Colon, II.

Before: GRIBBS, P.J., and MACKENZIE and H. R. GAGE,* JJ.

MACKENZIE, J. Respondent appeals as of right from a probate court order terminating his parental rights pursuant to the Michigan Adoption Code, MCL 710.51(6); MSA 27.3178(555.51)(6). Respondent raises questions concerning statutory construction and his right to a jury trial at the adoption proceeding. We affirm.

On May 12, 1982, petitioner Mary Lou Rodriguez petitioned to have the parental rights of respondent/natural father terminated so that the stepfather, Jony Rodriguez, could adopt respondent's two children. Petitioner had been granted legal custody of the children, Christina, born July 17, 1976, and Fran, III, born October 6, 1977, in a divorce judgment entered April 27, 1979. Subsequently, Mr. Rodriguez had filed a petition under the Adoption Code to adopt the children. Mary Lou Rodriguez's petition for termination of parental rights alleged that respondent had failed to provide regular and substantial support for four years, and had substantially failed to visit, contact, or communicate with the children for three years.

A hearing was held on Mr. Rodriguez's petition on December 8, 1983. Testimony revealed that the default judgment of divorce required respondent to pay $50 per week in child support. As of July 21, 1983, respondent had paid a total of $920 and was $10,265.50 in arrears. Respondent had visited his

---

* Circuit judge, sitting on the Court of Appeals by assignment.

children three to four times each in 1979 and 1980 and two to three times each in 1981 and 1982. He had sent Christmas gifts in 1979.

Respondent did not testify at the hearing. The evidence showed that respondent had been employed from March, 1980, to September, 1980. He had made most of the child support payments in 1980; he had also paid $110 to the Friend of the Court in 1981. In addition, respondent had made two direct payments to petitioner. In September, 1981, respondent was incarcerated. He was subsequently convicted of arson and four counts of first-degree murder, and sentenced to four natural life terms and one 12- to 20-year term of imprisonment.

The probate court found that respondent had regularly and substantially failed to support or visit his children for two years or more preceding his incarceration. The court entered an order terminating respondent's parental rights on December 12, 1983. On appeal, a brief was filed on behalf of the minors.

Respondent's first claim is that the probate court committed reversible error in shifting the burden of proof to him to show an inability to provide support. Respondent assumes that his ability to support was a relevant factor under the statute governing stepparent adoptions, MCL 710.51(6); MSA 27.3178(555.51)(6). This section provides:

"If the parents of a child are divorced, or if the parents are unmarried but the father has acknowledged paternity or is a putative father who meets the conditions in section 39(2) of this chapter, and if the parent having legal custody of the child subsequently marries and that parent's spouse petitions to adopt the child, the court upon notice and hearing may issue an order

terminating the rights of the other parent if both of the following occur:

"(a) The other parent, having the ability to support, or assist in supporting, the child, has failed or neglected to provide regular and substantial support for the child or if a support order has been entered, has failed to substantially comply with the order, for a period of 2 years or more before the filing of the petition.

"(b) The other parent, having the ability to visit, contact, or communicate with the child, has regularly and substantially failed or neglected to do so for a period of 2 years or more before the filing of the petition."

The attorney for the minors contends that this provision does not require any showing regarding the natural father's ability or inability to support in cases where a support order has been entered. The minors argue that subsection (6)(a) should be read as two independent parts:

(1) The other parent, having the ability to support, or assist in supporting, the child, has failed or neglected to provide regular and substantial support for the child, for a period of 2 years or more before the filing of the petition; *or*

(2) The other parent, if a support order has been entered, has failed to substantially comply with the order, for a period of 2 years or more before the filing of the petition.

Under this construction, the minors argue, petitioner satisfied her burden of proof because the evidence clearly showed that respondent had failed to substantially comply with the child support order in the divorce judgment.

Interpretation of MCL 710.51(6)(a) is an issue of first impression in this Court. When a statute is unambiguous on its face, statutory interpretation and construction is unnecessary. But where an ambiguity exists, the Court must determine and

give effect to the legislative intent. *Sullivan v Gray*, 117 Mich App 476; 324 NW2d 58 (1982), *lv den* 417 Mich 1051 (1983). To resolve a perceived ambiguity, the Court will look to the object of the statute, and will apply a reasonable construction which best accomplishes the statute's purpose. *Charter Twp of Pittsfield v City of Saline*, 103 Mich App 99; 302 NW2d 608 (1981).

We believe an ambiguity does exist in MCL 710.51(6)(a). The statute may be read to support either the respondent's or the minors' position. However, looking to the purposes of the statute and the legal framework governing child support in Michigan, we find that the minors' interpretation is correct.

MCL 710.51(6) was part of a 1980 amendment to the Michigan Adoption Code. See 1980 PA 509. Its primary purpose was to foster stepparent adoptions in families where the natural parent had regularly and substantially failed to support or communicate and visit with the child. The amendment was designed to redress the unfairness of prior law, which had required the natural parent's consent in all proposed adoptions. These objectives are revealed in the House Legislative Analysis of HB 5791 (September 19, 1980):

"Under the Michigan Adoption Code, if parents of a child are divorced and the parent having legal custody of the child subsequently remarries, that parent's new spouse may not adopt the child unless given the consent of the other living parent. This presents problems in cases where the parent who does not have legal custody of the child cannot be located, or fails to support or communicate with the child but has not allowed his or her parental rights to be terminated. In such instances, even though the child's stepparent may be providing the material and emotional support which would be expected of the child's legal parent, that stepparent

may not adopt the child or act in a legal capacity as the child's parent, such as to give consent to treatment in a medical emergency. Given the inherent unfairness to the stepparent, the parent having legal custody, and the child, of allowing a parent who does not support or communicate with his or her child to block the adoption of that child by a loving, caring stepparent, some feel that the law should be changed to permit the termination of parental rights under such circumstances, so as to enable the stepparent to adopt the child."

Under the respondent's interpretation, a stepparent who wishes to adopt must prove *both* that the divorced natural parent has not complied with a support order, *and* that the parent had the ability to comply. However, this interpretation would tend to frustrate the purposes of the amendment in cases where the divorced parent is so remote from the child and the court proceedings that the parent's inability to support cannot be proven. Thus, respondent's interpretation would place a virtually impossible burden on the stepparent seeking adoption precisely where the termination of parental rights would be most warranted. We do not believe the Legislature would have intended such a result. Statutes are to be construed to avoid unreasonable or absurd results. *In the Matter of Karen Marable,* 90 Mich App 7; 282 NW2d 221 (1979), *lv den* 407 Mich 871 (1979).

Finally, the minors' construction of the statute comports with Michigan laws concerning child support. The Legislature is presumed to know of and legislate in harmony with existing law. *Rochester Community Schools Bd of Ed v State Bd of Ed,* 104 Mich App 569, 578; 305 NW2d 541 (1981). In Michigan a parent who cannot comply with a child support provision in a divorce decree may petition the circuit court for a modification. The circuit court is statutorily empowered to modify

orders for child support upon a showing of a change in circumstances. MCL 552.17; MSA 25.97; *Jacobs v Jacobs,* 118 Mich App 16; 324 NW2d 519 (1982). In fashioning a support order or a modification, the court must consider a number of factors, including the noncustodial parent's income and ability to pay. *Vaclav v Vaclav,* 96 Mich App 584; 293 NW2d 613 (1980); *Cochran v Buffone,* 137 Mich App 761; 359 NW2d 557 (1984). Thus, ability to pay is already factored into a child support order, and it would be redundant to require a petitioner under the Adoption Code to prove the natural parent's ability to pay as well as that parent's noncompliance with a support order.

For the above reasons, we hold that, in cases where a child support order has been entered, MCL 710.51(6)(a) may be satisfied by a showing that the natural parent has "failed to substantially comply with the [support] order, for a period of 2 years or more before the filing of the petition". Such a showing was clearly made in the case at bar where the probate court found that the relevant time period was two years preceding respondent's incarceration. The petitioner's evidence demonstrated clearly and convincingly that the respondent had failed to substantially comply with the support order. The respondent did not testify at the hearing or offer any evidence to show why he had failed to comply with the order. Had he offered evidence to satisfactorily explain his failure to comply, the probate court could have properly declined to terminate his parental rights. The language of MCL 710.51(6); MSA 27.3178(555.51)(6) is permissive and not mandatory:

"[T]he court upon notice and hearing *may issue* an order terminating the rights of the other parent if both of the following occur * * *." (Emphasis added.)

Respondent next argues that the evidence did not sustain the court's finding that he had the "ability to visit, contact, or communicate with" the children, as required by MCL 710.51(6)(b). Respondent maintains that he was denied the right to visit his children on several occasions, and that his visits became sporadic as a result of his not being welcome in petitioner's new home.

Respondent's argument is lacking in merit. In proceedings to terminate parental rights under the Juvenile Code, the state must show by clear and convincing evidence that the termination is warranted. *In the Matter of Bidwell,* 129 Mich App 499; 342 NW2d 82 (1983); *In the Matter of Moore,* 134 Mich App 586; 351 NW2d 615 (1984). We believe petitioner must shoulder the same burden of proof in Adoption Code proceedings under MCL 710.51(6), since a parent's right to the custody of his or her children is a fundamental "liberty", an interest guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution. *Reist v Bay Circuit Judge,* 396 Mich 326; 241 NW2d 55 (1976); *In the Matter of John C Kurzawa, Jr,* 95 Mich App 346; 290 NW2d 431 (1980).

A conflict exists in this Court as to the proper standard of review on appeal from an order terminating parental rights. We need not decide whether the correct standard is *de novo* as stated in *Bahr v Bahr,* 60 Mich App 354, 360; 230 NW2d 430 (1975), *lv den* 394 Mich 794 (1975), or the "clearly erroneous" standard followed in *In the Matter of Irving,* 134 Mich App 678; 352 NW2d 295 (1984), as we reach the same decision under either standard.

In the instant case, the probate court specifically recognized that proof by clear and convincing evidence was necessary, and that a showing of ability to visit was required under MCL

710.51(6)(b). The court found that respondent had not been welcome inside petitioner's home but had been permitted to take the children on his visitations. Despite this, he had visited only eight to eleven times in 2-1/2 years. The court termed this visitation "minimal" and found that respondent had failed regularly and substantially to visit, contact, or communicate with the children for two years preceding his incarceration.

We cannot say that the findings of the probate court are clearly erroneous. Repsondent's visits were sporadic, and his claim that petitioner effectively blocked his efforts to see the children more frequently is not convincing. Petitioner testified that respondent was aware of the children's whereabouts and telephone number at all times. He did not request a change in the visitation order (which provided for "reasonable visitation") or complain to the Friend of the Court about being denied visitation. With this evidence on the record, we reject respondent's argument that he did not have the "ability to visit" within the meaning of MCL 710.51(6)(b).

Respondent's final claim is that the probate court commited reversible error in denying his request for a jury trial. Respondent relies on Const 1963, art 1, § 14, which states in part:

"The right of trial by jury shall remain, but shall be waived in all civil cases unless demanded by one of the parties in the manner prescribed by law."

Respondent also relies on a comparison between provisions for parental termination in the Juvenile Code and the Adoption Code.

The minors do not address respondent's arguments because they assert that respondent failed to demand a jury trial. This claim is clearly lack-

ing in merit. The record reveals that the natural father did demand a jury trial and that the parties briefed this issue in the probate court.

The question of whether there is a right to jury trial in proceedings under MCL 710.51(6) is one of first impression. MCL 710.51(6) provides for notice and a hearing before parental rights can be terminated, but the section is silent on the matter of trial by jury. The Adoption Code does address other types of hearings. For example, MCL 710.29 subds (1) and (5); MSA 27.3178(555.29), subds (1) and (5), governing the release of a child for adoption, requires that a release be executed before a probate judge, and that the record show that the parent was notified of, and voluntarily relinquished, his or her rights to the child. The proceeding under MCL 710.29; MSA 27.3178(555.29) appears to be nonadversarial. This Court has held that there is no due process right to counsel in a proceeding under MCL 710.29. *In the Matter of Kenneth Jackson, Jr,* 115 Mich App 40; 320 NW2d 285 (1982).

Another Adoption Code provision, MCL 710.39(1); MSA 27.3178(555.39)(1), states that the court can terminate the rights of a putative father who requests custody after inquiry into his fitness and ability to care for the child and after determining that granting him custody would not be in the best interest of the child. Subsection (2) of this provision requires a hearing under *either* the Juvenile Code, MCL 712A.2; MSA 27.3178(598.2), *or* the Adoption Code, MCL 710.51(6) (the provision at issue here), where a putative father establishes a custodial relationship or shows that he has supported or cared for the mother or child. Because MCL 710.39(2); MSA 27.3178(555.39)(2) equates Adoption Code proceedings with Juvenile Code

proceedings, reference to the Juvenile Code is relevant to our determination.

Parental termination under the Juvenile Code consists of two parts: adjudicative and dispositional. The adjudicative part is jurisdictional. MCL 712A.2(b); MSA 27.3178(598.2)(b); JCR 1969, 8.1(a); MCR 5.908(A)(1)(a). Jurisdiction is typically found where a parent has abandoned, neglected, or failed to properly care for a child. MCL 712A.2(b), subds (1) and (2). There *is* a right to jury trial under the adjudicative phase of Juvenile Court proceedings. JCR 1969, 8.1(a); MCR 5.908(A)(1)(a). *In the Matter of Joseph D Boughan,* 127 Mich App 357; 339 NW2d 181 (1983).

The dispositional part follows establishment of jurisdiction. MCL 712A.19a; MSA 27.3178(598.19a). There is no right to a jury trial at the dispositional phase. JCR 1969, 8.1(b); MCR 5.908(A)(2)(a); *Boughan, supra.* The probate court must make findings of fact following a dispositional hearing. MCL 712A.19a.

In the present case, respondent argues that the parental termination hearing under MCL 710.51(6) parallels the adjudicative phase of a Juvenile Code proceeding because the consequences may be the same. Respondent maintains that there is no logical reason to afford a jury trial under the Juvenile Code but not the Adoption Code.

We disagree. The parental rights termination hearing under the Adoption Code is analogous to the dispositional phase of a Juvenile Code hearing. The findings of fact that the court must make under the Adoption Code, MCL 710.51(6), are very similar to the grounds for termination under MCL 712A.19a(b); MSA 27.3178(598.19a)(b) of the Juvenile Code which provides:

"Where a child remains in foster care in the tempo-

rary custody of the court following the initial hearing provided by section 19, the Court may make a final determination and order placing the child in the permanent custody of the court, if it finds any of the following:

* * *

"(b) The child is left with intent of desertion and abandonment by his parent or guardian in the care of another person without provision for his support or without communication for a period of at least 6 months. The failure to provide support or to communicate for a period of at least 6 months shall be presumptive evidence of the parent's intent to abandon the child. If, in the opinion of the court, the evidence indicates that the parent or guardian has not made regular and substantial efforts to support or communicate with the child, the court may declare the child deserted and abandoned by his parent or guardian."

In both provisions the court makes findings concerning the parent's support of and communication with the child for designated lengths of time. See *Boughan, supra.* As a jury trial is precluded in the Juvenile Code dispositional phase, it follows that there is no right to a jury trial in hearings under MCL 710.51(6).

Respondent also argues that he is constitutionally entitled to a jury trial under Const 1963, art 1, § 14. The validity of this assertion depends on application of the following standards from *Conservation Dep't v Brown,* 335 Mich 343, 346-347; 55 NW2d 859 (1952):

"[T]he right to trial by jury is preserved in all cases where it existed prior to adoption of the Constitution. * * * The constitutional guaranty applies to cases arising under statutes enacted subsequent to adoption of the Constitution, which are similar in character to cases in which the right to jury trial existed before the Constitution was adopted. * * * The right to trial by

jury, in cases where it existed prior to adoption of the Constitution, may not be defeated by enactment of a statute providing for trial on the chancery side of issues formerly triable in proceedings at law. * * * Where there are questions of fact to be determined and the issues are such that at common law a right to jury trial existed, that right cannot be destroyed by statutory change of the form of action or creation of summary proceedings to dispose of such issues without jury, in the absence of conduct amounting to waiver." (Citations omitted.)

The Court in *Brown* held that defendants had no right to a jury trial because "these proceedings are not under a cause of action known to the common law, but are under a new cause of action, created by statute, which was unknown to the legal system of this State when the Constitution was adopted". 335 Mich 349-350.

Applying the *Brown* standards, this Court in *Meyer v Treasury Dep't,* 129 Mich App 335, 339; 341 NW2d 516 (1983), found that a hearing before the Michigan Tax Tribunal was not a proceeding that existed at common law before adoption of the Michigan Constitution of 1835, and thus there was no right to jury trial.

In the case at bar, the relevant statutory provision was incorporated into the Adoption Code by 1980 PA 509. Since this postdated the Michigan Constitution, under *Brown,* respondent's entitlement to a jury trial depends on whether this case is "similar in character" to cases affording a jury trial before the Constitution was adopted. In addition, we must look to whether the instant proceeding involves a cause of action "known to the common law". *Brown, supra; Meyer, supra.*

In general, before the Constitution was adopted, there was a right to jury trial at law but not in equity. *Wolfenden v Burke,* 69 Mich App 394, 399;

245 NW2d 61 (1976); *Brown v Kalamazoo Circuit Judge,* 75 Mich 274; 42 NW 827 (1889). At common law the wife had no right to the custody of her minor children; custody belonged solely to the husband/father. *Sovereign v Sovereign,* 354 Mich 65, 74-75; 92 NW2d 585 (1958); *In re Mark T,* 8 Mich App 122, 137; 154 NW2d 27 (1967). But "the court of chancery exercised [its] jurisdiction to control the father's legal right to his child * * * and where for immorality or other reason the father was an unfit person to have the custody of the child, it was given to another, the welfare of the child being the controlling consideration". *Sovereign, supra,* p 77, quoting Long, A Treatise on the Law of Domestic Relations (3d ed), § 267. Thus, at common law, actions to terminate parental rights did exist, and courts of equity had jurisdiction over them.

When the Michigan Legislature passed the custody of infants act, 1873 PA 192, providing that the mother could be granted custody, and later amended the act to recognize that courts of chancery could issue decrees regarding child custody (which had always been the rule), it was clear child custody matters were equitable in nature. *Sovereign, supra; In re Mark T, supra.*

Consequently, we reject respondent's argument that he was entitled to a jury trial under Const 1963, art 1, § 14 in this Adoption Code proceeding.

Having found respondent's arguments lacking in merit, we affirm the probate court's order terminating respondent's parental rights.

Affirmed.