Per Curiam.
 

 Petitioners appeal as of right the family court’s order dismissing their petition for adoption following a hearing on Marilyn Moore’s petition to terminate the parental rights of her child’s biological father, McKinley Newton, III. We affirm.
 

 On June 22, 1989, petitioner Marilyn Moore (then Marilyn Baker) gave birth to Chanel Marie Newton.
 
 *488
 
 The child’s birth certificate designated respondent McKinley Newton as the natural father. The parents were not then, and have never been, married to one another. On August 29, 1991, a judgment for support was entered, finding respondent to be the child’s biological father and ordering him to pay child support in the amount of $98 a week. By his own admission, respondent substantially failed to comply with the 1991 order of support and over the next several years accumulated an arrearage of approximately $23,000. In 1996, respondent’s support obligation was modified and approximately $8,000 of the arrears were discharged with the mother’s consent. The circumstances surrounding the modification are not clear from the record, but it appears that respondent’s obligation was reduced to a payment of $49 a week with an additional $15 to be paid and applied to the arrearage, for a total weekly payment of $64. According to petitioners, this amount was ordered to be withheld from respondent’s wages from his employment at the Arrow Door Company; however, because of the eight percent surcharge on overdue support payments imposed by MCL 552.603a; MSA 25.164(3a), the entirety of the $15 a week intended to be applied to the arrearage has been consumed by the surcharge and thus the arrearage has not been reduced since the support modification. However, it is undisputed that respondent has consistently made the ordered support payments since the 1996 modification.
 

 On December 6, 1997, Eric Moore and Marilyn Baker were married. One year later, they filed a petition for a stepparent adoption. In conjunction with the adoption, petitioners sought to terminate the parental rights of respondent. A hearing on the peti
 
 *489
 
 tion to terminate respondent’s parental rights was held on February 24, 1999. At the close of proofs, the family court held that because respondent had been providing support as ordered under the modified judgment of support, it was unable to terminate respondent’s rights pursuant to MCL 710.51(6); MSA 27.3178(555.51)(6). Thus, it dismissed the adoption petition. Petitioners appeal as of right, alleging that the family court erred as a matter of law by dismissing the petition.
 

 The interpretation of a statute is a question of law, which this Court reviews de novo on appeal.
 
 In re Schnell,
 
 214 Mich App 304, 310; 543 NW2d 11 (1995). The primary goal of judicial interpretation of statutes is to ascertain the intent of the Legislature.
 
 Id.
 
 at 309. The first step in determining intent is to review the specific language of the statute.
 
 Barr v Mt Brighton Inc,
 
 215 Mich App 512, 516-517; 546 NW2d 273 (1996). If statutory language is clear, it must be enforced as written, but if it is susceptible to more than one interpretation, we must determine what the Legislature meant by the language.
 
 People v Denio,
 
 454 Mich 691, 699; 564 NW2d 13 (1997). “Statutory language should be construed reasonably and the purpose of the statute should be kept in mind.”
 
 Barr, supra
 
 at 516. However, if a statute is ambiguous and reasonable minds can differ with regard to the meaning of the statute, “the Court will look to the object of the statute, and will apply a reasonable construction which best accomplishes the statute’s purpose.”
 
 In re Colon,
 
 144 Mich App 805, 810; 377 NW2d 321 (1985).
 

 The Adoption Code, MCL 710.21
 
 et seq.;
 
 MSA 27.3178(555.21)
 
 et seq.,
 
 provides for termination of a natural parent’s rights under the following conditions:
 

 
 *490
 
 (6) If the parents of a child are divorced, or if the parents are unmarried but the father has acknowledged paternity or is a putative father who meets the conditions in section 39(2) of this chapter, and if the parent having legal custody of the child subsequently marries and that parent’s spouse petitions to adopt the child, the court upon notice and hearing may issue an order terminating the rights of the other parent if both of the following occur:
 

 (a) The other parent, having the ability to support, or assist in supporting, the child, has failed or neglected to provide regular and substantial support for the child or if a support order has been entered, has failed to substantially comply with the order, for a period of 2 years or more before the filing of the petition.
 

 (b) The other parent, having the ability to visit, contact, or communicate with the child, has regularly and substantially failed or neglected to do so for a period of 2 years or more before the filing of the petition. [MCL 710.51; MSA 27.3178(555.51).]
 

 At issue in the present case is whether, in a case in which a support order exists, the court must look past the noncustodial parent’s compliance with such order and examine the ability of the noncustodial parent to pay more than is required under the order. Petitioners argue that because subsection 6(a) is phrased disjunctively, termination of rights is permitted where it can be shown that the noncustodial parent has failed to either provide support within that parent’s ability or comply with the terms of an existing support order. As such, petitioners argue, the mere fact that the noncustodial parent has complied with an existing support order is insufficient to prevent termination where the compliance is not consistent with the actual ability to pay.
 

 In
 
 Colon, supra
 
 at 809-812, this Court noted the ambiguous nature of subsection 6(a), but, after care
 
 *491
 
 ful statutory analysis, explained that this subsection addresses two independent situations: (1) where a parent, when able to do so, fails or neglects to provide regular and substantial support, and (2) where a support order has been issued and the parent fails to substantially comply with it. At issue in
 
 Colon
 
 was whether, in a case where the noncustodial parent is subject to a child support order, the petitioner is also required to prove that the noncustodial parent had the ability to pay support. In finding no such requirement, this Court reasoned that “ability to pay is already factored into a child support order, and it would be redundant to require a petitioner under the Adoption Code to prove the natural parent’s ability to pay as well as that parent’s noncompliance with a support order.”
 
 Id.
 
 at 812.
 

 The holding in
 
 Colon
 
 does not directly address the argument in the case at hand, because the holding that a petitioner need not prove both circumstances (ability to pay and noncompliance with an order) does not negate petitioners’ argument here that they could choose to prove either circumstance. However,
 
 Colon
 
 does provide guidance. As stated in
 
 Colon, id.
 
 at 812, the support order in place has already taken “ability to pay” into consideration. In other words, there are effectively two questions inherent in the first clause in subsection 6(a): (1) What is the ability to support the child?; and (2) Was there a failure of such support? However, the second clause in subsection 6(a) asks only if there was a failure of support, because the existing support order already answers the first question. The court deciding the termination and adoption must follow the determination made regarding the respondent’s ability to support the child
 
 *492
 
 in the support order as a matter already settled by a judgment. Moreover, the Legislature is presumed to know of and legislate in harmony with existing law.
 
 Colon, supra
 
 at 811. In cases where the order of support no longer accurately reflects such ability, either parent may petition the court for modification of the order. MCL 722.720; MSA 25.500, MCL 552.17; MSA 25.97;
 
 Kosch v Kosch,
 
 233 Mich App 346, 350; 592 NW2d 434 (1999). Any discrepancies between the circumstances of the parties and the order of support may be appropriately reviewed and corrected by the filing of such a petition. See
 
 Colon, supra
 
 at 812. To require the court to inquire into ability to pay in cases such as this would be a repetitious and inefficient use of judicial resources and would essentially allow a collateral attack of the support order. Instead, the court order takes the place of any inquiry into the circumstances of the parents. Only in cases in which there is no support order in place is an inquiry into ability to pay necessary or even allowed. Any other interpretation in this case would allow a circumvention of the official order of the court. If the level of child support required of a parent by a court order is inadequate, then a modified order must be sought by the same processes by which the existing order has been obtained.
 

 Such a reading of the statute is also consistent with the purpose of the statute as announced in
 
 Colon.
 
 The primary purpose of MCL 710.51(6); MSA 27.3178(555.51)(6) is to “foster stepparent adoptions in families where the natural parent had regularly and substantially failed to
 
 support or communicate
 
 and visit with the child,” yet refuses or is unavailable to consent to the adoption.
 
 Colon, supra
 
 at 810 (empha
 
 *493
 
 sis added). To allow termination of the parental rights of a noncustodial parent who provides such support, as outlined in an existing order of support, would not be consistent with this purpose. Indeed, the clear purpose of the statute is to allow the creation of a two-parent family where one did not exist before, not to break up an existing parent-child relationship. Although we cannot comment on the qualities of respondent’s parenting abilities overall, we do know that he has complied with the court order in providing financial support for his child.
 

 Thus, we conclude that the family court correctly interpreted MCL 710.51(6)(a); MSA 27.3178(555.51)(6)(a) to prohibit termination of parental rights where the noncustodial parent has substantially complied with an existing order of support. The only logical interpretation of the statute is that the first clause of subsection 6(a) applies where there is no support order and the second clause applies when there is an existing order, not that the petitioner has the option of proving either circumstance. Otherwise, a parent could be “blindsided” by termination, even though the parent was paying support and complying to the full extent of the law. Because it is clear that respondent here did comply with the existing court support order, termination of his parental rights is not allowed under the statute.
 

 Petitioners next argue that the trial court improperly failed to recognize that despite respondent’s compliance with the existing support order, the court could terminate respondent’s parental rights if it found that termination was in the best interests of the child. This argument is equally without merit. In
 
 In re Hill,
 
 221 Mich App 683; 562 NW2d 254 (1997), this
 
 *494
 
 Court held that because MCL 710.51(6); MSA 27.3178(555.51)(6) is permissive rather than mandatory, a court may consider the best interests of the child in deciding whether to grant a petition to terminate the noncustodial parent’s rights.
 
 Id.
 
 at 696. Thus, even if the petitioner proves the enumerated circumstances that allow for termination, a court need not grant termination if it finds that it would not be in the best interests of the child. However, contrary to petitioners’ assertions, the permissive nature of the statute does not allow for a termination of rights based
 
 solely
 
 on consideration of the child’s best interests. A petitioner must still show by clear and convincing evidence that the requirements of both subsections 6(a) and 6(b) have been met.
 
 Hill, supra
 
 at 692;
 
 Colon, supra
 
 at 813. The holding in
 
 Hill, supra,
 
 merely clarifies that such a showing does not mandate a termination of rights where the court, in its discretion, finds that termination would be inconsistent with the best interests of the child. Thus, the best interests of the child, as defined under the statute, were not at issue in this case because petitioners could not first establish the two necessary circumstances for termination.
 

 For these reasons, we affirm the family court’s order dismissing petitioners’ petition for adoption and termination of the parental rights of respondent.
 

 Affirmed.