*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re NRC, Minor.

AMANDA MAY NEWTON,

Petitioner-Appellant,

v

RILEY HAMMOND MILLER,

Respondent-Appellee.

FOR PUBLICATION
March 16, 2023
9:05 a.m.

No. 362915
Antrim Circuit Court
LC No. 2021-008763-AY

Before: M. J. KELLY, P.J., and JANSEN and CAMERON, JJ.

CAMERON, J.

In this stepparent adoption case, petitioner, Amanda May Newton, appeals as of right the trial court's order granting a directed verdict to respondent Riley Hammond Miller. Because the trial court did not err in finding Riley substantially complied with the order of child support, we affirm.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

In 2015, when the parties were in high school, Amanda told Riley that she was pregnant with his child. Shortly thereafter, Riley moved from Michigan to Maryland where he remained. The child was born on November 9, 2015. When the child was around two years old, Amanda began dating Corbin Thunder Newton. Amanda and Corbin later married.

Amanda filed a paternity action against Riley, and on January 6, 2017 the trial court entered an order of filiation. The order granted both parties legal custody of the child and Amanda sole physical custody. Riley was granted parenting time and ordered to pay child support.

Throughout the years, Riley was inconsistent with child support payments. There were some months Riley paid $0 in child support, or did not pay the full amount due. Even when payments were made, he was often in arrears. Amanda had sought with the court enforcement of

-1-

the child support order. There were, however, several months in which Riley made large, lump sum payments. These lump sums would usually reduce or eliminate the arrearages.

On June 7, 2021 Amanda and Corbin filed a petition to terminate Riley's parental rights and to permit Corbin to adopt the child. According to the petition, Riley had failed to comply with support orders and had failed to visit or contact the child for a period of two years or more. At the termination hearing, Stacy Leach, a caseworker for the Friend of the Court in Kalkaska County, testified regarding Riley's compliance with the support order. Leach reported that as of May 2021, Riley's monthly obligation totaled $507. At the time the petition was filed, Riley's arrearage was $146—meaning Riley was "essentially" a week behind in his payments. She said that from May 1, 2019 to April 27, 2021, Riley had paid thousands of dollars in support payments.

There was also testimony about Riley's contact with the child. Amanda testified she notified Riley of the child's birth, but that Riley had waited a month to respond. After that, Riley's contact with Amanda and the child was limited. Amanda said that after she broached the subject of a stepparent adoption, Riley asked for more telephone calls with the child. From December 2020 to February 2021, Riley and the child had about ten phone calls. Amanda testified the phone calls were upsetting to the child; therefore, she stopped allowing them. Riley, meanwhile, stated that he had tried to visit the child, but Amanda would not allow it. He said he made "sporadic" phone calls to the child and that he sent gifts for Christmas and birthdays.

At the end of the hearing, Riley's attorney moved for directed verdict, arguing Amanda failed to establish the elements of MCL 710.51(6). The trial court agreed, stating "this action should never [have] . . . been filed based on the facts . . . this case presented." It later entered an order granting the motion for directed verdict. This appeal followed.

## II. STANDARD OF REVIEW

The petitioners in a stepparent adoption proceeding have the burden of proving by clear and convincing evidence that termination of the noncustodial parent's rights is warranted. *In re Hill*, 221 Mich App 683, 691; 562 NW2d 254 (1997). The trial court's factual findings are reviewed for clear error. *Id*. at 691-692. "A finding is clearly erroneous if, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake was made." *Id*. at 692.

We review de novo a trial court's decision on a motion for directed verdict. *Lewis v LeGrow*, 258 Mich App 175, 192; 670 NW2d 675 (2003). Issues of statutory interpretation are also reviewed de novo. *In re Newton*, 238 Mich App 486, 489; 606 NW2d 34 (1999).

> The primary goal of judicial interpretation of statutes is to ascertain the intent of the Legislature. The first step in determining intent is to review the specific language of the statute. If statutory language is clear, it must be enforced as written, but if it is susceptible to more than one interpretation, we must determine what the Legislature meant by the language. Statutory language should be construed reasonably and the purpose of the statute should be kept in mind. However, if a statute is ambiguous and reasonable minds can differ with regard to the meaning of the statute, the Court will look to the object of the statute, and will apply a

reasonable construction which best accomplishes the statute's purpose. [*Newton*, 238 Mich App at 489 (quotation marks and citations omitted).]

## III. FOUNDATIONAL LAW

MCL 710.51(6) governs the termination of a noncustodial parent's rights in a stepparent adoption proceeding. *In re ALZ*, 247 Mich App 264, 272; 636 NW2d 284 (2001). MCL 710.51(6) states:

> If the parents of a child are divorced, or if the parents are unmarried but the father has acknowledged paternity or is a putative father who meets the conditions in section 39(2) of this chapter, and if a parent having custody of the child according to a court order subsequently marries and that parent's spouse petitions to adopt the child, the court upon notice and hearing may issue an order terminating the rights of the other parent if both of the following occur:

> (a) The other parent, having the ability to support, or assist in supporting, the child, has failed or neglected to provide regular and substantial support for the child or if a support order has been entered, has failed to substantially comply with the order, for a period of 2 years or more before the filing of the petition. A child support order stating that support is $0.00 or that support is reserved shall be treated in the same manner as if no support order has been entered.

> (b) The other parent, having the ability to visit, contact, or communicate with the child, has regularly and substantially failed or neglected to do so for a period of 2 years or more before the filing of the petition.

The purpose of MCL 710.51(6) is to "foster stepparent adoptions in families where the natural parent had regularly and substantially failed to support or communicate and visit with the child" and refuses to consent to the adoption. *In re Colon*, 144 Mich App 805, 810; 377 NW2d 321 (1985). To prove that termination of the noncustodial parent's rights is warranted, a petitioner must satisfy the requirements of subsection (6)(a) and subsection (6)(b) of MCL 710.51(6) by clear and convincing evidence. *ALZ*, 247 Mich App at 272. "[I]n applying MCL 710.51(6), courts are to look at the two-year period immediately preceding the filing of the termination petition." *In re TALH*, 302 Mich App 594, 597-598; 840 NW2d 398 (2013).

Amanda argues that the trial court employed the incorrect legal standard when evaluating the motion for directed verdict under the two-pronged analysis of MCL 710.51(6). Specifically, she contends that the term "substantially comply" in subsection (6)(a), has not been defined by any published decisions in Michigan. She offers a definition for this term and argues the trial court erred when it did not comport its analysis with her definition. Amanda also opines that the trial court clearly erred when it found that she did not satisfy the requirements of subsection (6)(b).

## IV. MCL 710.51(6)(A)

### A. DEFINITION OF "SUBSTANTIALLY COMPLY"

The statutory scheme does not define the term "substantially comply" and there is no published decision on point. Therefore, we must define this term prior to analyzing Amanda's argument that the trial court incorrectly found Riley to have substantially complied with the child support order. We turn first to the dictionary definitions of the words "substantial" and "comply." The word "substantial" can be defined as "considerable in quantity." *Merriam-Webster's Collegiate Dictionary* (11th ed). And, the word "comply" is defined as "to conform, submit, or adapt as required or requested." *Merriam-Webster's Collegiate Dictionary* (11th ed). On the basis of these definitions, we hold that, under MCL 710.51(6)(a), a parent substantially complies with a child support order when they have made a considerable quantity of the payments required by the order.

Even so, Amanda encourages us to use a definition from a decision by the Oklahoma Court of Civil Appeals, which defined substantial compliance as "a regular, bona fide pattern of payment" over a certain period. *In re CDO*, 39 P3d 828, 831; 2002 OK CIV APP 9 (Okla Civ App, 2001). "Decisions from other states are not binding on this Court, but they can be considered persuasive." *Johnson v Johnson*, 329 Mich App 110, 124 n 8; 940 NW2d 807 (2019). Presumably, the Oklahoma decision was premised on Oklahoma's statutory scheme concerning stepparent adoptions. But, Amanda offers no reference to this statutory scheme, nor does she explain how the Oklahoma statute is similar to statute in Michigan. Moreover, analysis of *CDO*, without more, runs afoul of Michigan's requirements for statutory interpretation. As noted, the starting place to define undefined terms is the dictionary. *Newton*, 238 Mich App at 489. Because our definition above employs the correct principles of statutory interpretation, we need not rely on another state's opinion to reach our decision.[1]

### B. APPLICATION OF SUBSTANTIALLY COMPLY

Given our holding that "substantially comply" means "a considerable quantity of payments as required by the order," the next question is whether the trial court erred when it found that Amanda and Corbin did not establish the requirements of subsection (6)(a)—specifically, that Riley had not substantially complied with the support order. The order of filiation included a section directing child support. This section stated in relevant part: "RILEY HAMMOND MILLER shall pay child support in the amount of: $174.00[2] Monthly for 1 child commencing February 1, 2016 until further order of the Court." (Footnote added). The order also contemplated

---

[1] The Oklahoma decision was referenced in an unpublished, not binding decision of this Court, *In re Ferguson*, unpublished per curiam opinion of the Court of Appeals, issued June 12, 2007 (Docket No. 273915), p 2. *Ferguson* holds no precedential value and we are not obliged to follow it. MCR 7.215(C)(1). Moreover, *Ferguson* makes no mention of the dictionary definition of "substantially comply;" therefore, it is unclear whether *Ferguson* analyzed the issues under the correct framework.

[2] The court modified this amount several times.

-4-

the possibility of an arrearage, stating: "[T]he payer of support shall pay a minimum of $50.00 per month toward child support arrears."

The statutory period to determine whether a respondent substantially complied with a support order is "a period of 2 years or more before the filing of the petition." MCL 710.51(6)(a). Amanda and Corbin filed the petition on June 7, 2021. Therefore, the statutory period in this case is at least from June 2019 to May 2021. The evidence shows that, during that timeframe, there were 11 months that Riley paid $0 in child support, causing him to accrue arrearages. In other words, Riley paid child support for 13 of the months in the two-year period before the filing of the petition. Further, the evidence demonstrates that Riley would often pay child support in lump sums, reducing or eliminating any arrearage. When Amanda and Corbin filed the petition, Riley was $146 in arrears.

On appeal, Amanda emphasizes the 11 months in which Riley failed to make any payment. She argues that Riley only caught up with payments after she sought enforcement by the court— therefore, Riley did not substantially comply with the support order. It is true Riley was not absolutely compliant with the order of support. His payments were often untimely, and he did not always pay his arrearage amount. However, the standard does not require absolute compliance; rather, it requires *substantial* compliance, which necessitates a party to have made a considerable quantity of payments under the child support order. The evidence in this case shows Riley made many of his child support payments, that he often caught up with arrearages by making lump sum payments, and at the time the petition was filed his arrearage totaled only $146. This small arrearage in relation to the thousands of dollars in child support Riley paid in the preceding two years is insufficient to show Riley failed to substantially comply with his child support obligation. Amanda and Corbin failed to meet their burden under subsection (6)(a) and the trial court did not err in granting Riley's motion for directed verdict.

## V. MCL 710.51(6)(B)

As noted above, a petition for termination of parental rights and for stepparent adoption should only be granted if both subsection (6)(a) and subsection (6)(b) of MCL 710.51(6) are satisfied. *ALZ*, 247 Mich App at 272. Because we conclude the trial court correctly granted the motion for directed verdict because Amanda failed to satisfy subsection (6)(a), we need not consider whether she satisfied the requirements under subsection (6)(b).

Affirmed.

/s/ Thomas C. Cameron
/s/ Michael J. Kelly
/s/ Kathleen Jansen

-5-