*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* BWJ, Minor.

JAMES VANDER MAAS and SHARI VANDER MAAS,

        Petitioners-Appellees,

v

SCOTT ALAN EVANS,

        Respondent-Appellant.

FOR PUBLICATION
March 30, 2023
9:00 a.m.

No. 363607
Mecosta Circuit Court
Family Division
LC No. 22-001507-AF

Before: K. F. KELLY, P.J., and BOONSTRA and REDFORD, JJ.

REDFORD, J.

Respondent, Scott Evans, appeals by right the trial court's order terminating his parental rights to a minor child born out of wedlock as a result of a brief relationship with the child's mother, Jamie Vander Maas. For the reasons stated in this opinion, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## I. BACKGROUND FACTS

For a few months in 2018, respondent and Jamie were in a relationship and Jamie became pregnant. Respondent provided some support for Jamie until they ended their relationship. Jamie told respondent that she had an abortion. She gave birth to the child, however, and permitted respondent some contact. The child soon was placed into care with Jamie's parents, petitioners, James and Shari Vander Maas, who were appointed the child's guardians, after which respondent had no further contact. Respondent sought contact and offered to support the child but Jamie and petitioners denied him contact and declined any support. Respondent testified that he desired to establish his paternity, but he never filled out and filed the proper paperwork. On August 15, 2022, petitioners filed a petition for adoption of the child and that same day Jamie filed a petition for a hearing to identify the child's father and determine or terminate his parental rights. The court held an evidentiary hearing on September 20, 2022, at which respondent, Jamie, and petitioners each

testified, and the court received evidence respecting respondent's putative father status, fitness, and ability to properly care for the child. At the conclusion of the hearing, the trial court rendered its decision from the bench. The trial court entered an order terminating respondent's parental rights to the child. Respondent now appeals.

## II. STANDARD OF REVIEW

"A trial court's factual findings during a proceeding to terminate parental rights under the Adoption Code are reviewed for clear error." *In re AGD*, 327 Mich App 332, 338; 933 NW2d 751 (2019). This includes a trial court's findings regarding a child's best interests under MCL 710.39(1) and MCL 710.22(g). *In re BKD*, 246 Mich App 212, 215; 631 NW2d 353 (2001). "A finding is clearly erroneous if this Court is left with a definite and firm conviction that the trial court made a mistake." *Id*. This Court gives deference to the trial court's special opportunity to evaluate the credibility of witnesses who appear before it. MCR 2.613(C); *Sparling Plastic Indus, Inc v Sparling*, 229 Mich App 704, 716; 583 NW2d 232 (1998). We review de novo questions of statutory interpretation. *In re AGD*, 327 Mich App at 338.

## III. ANALYSIS

Under the Michigan Adoption Code (MAC), MCL 710.21 *et seq.*, "if a child is born out of wedlock and the release or consent of the biological father cannot be obtained, the child shall not be placed for adoption until the parental rights of the father are terminated by the court as provided in [MCL 710.37 or MCL 710.39.]" MCL 710.31(1). MCL 710.36 in relevant part provides:

> (1) If a child is claimed to be born out of wedlock and the mother executes or proposes to execute a release or consent relinquishing her rights to the child . . . and the release or consent of the natural father cannot be obtained, the judge shall hold a hearing as soon as practical to determine whether the child was born out of wedlock, to determine the identity of the father, and to determine or terminate the rights of the father as provided in this section and [MCL 710.37 or MCL 710.39.]

> \* \* \*

> (6) The court shall receive evidence as to the identity of the father of the child. . . . Based upon the evidence received, the court shall enter a finding identifying the father or declaring that the identity of the father cannot be determined.

"If the father is putative, the court must determine his rights pursuant to MCL 710.39." *In re MKK*, 286 Mich App 546, 559; 781 NW2d 132 (2009). "The two-tiered standard set forth in § 39 for terminating the parental rights of a putative father is based on principles set forth in multiple United States Supreme Court cases." *Id*. (citations omitted). MCL 710.39 provides in pertinent part:

> (1) If the putative father does not come within the provisions of subsection (2), and if the putative father appears at the hearing and requests custody of the child, the court shall inquire into his fitness and his ability to properly care for the child and shall determine whether the best interests of the child will be served by granting custody to him. If the court finds that it would not be in the best interests

-2-

of the child to grant custody to the putative father, the court shall terminate his rights to the child.

(2) If the putative father has established a custodial relationship with the child or has provided substantial and regular support or care in accordance with the putative father's ability to provide support or care for the mother during pregnancy or for either mother or child after the child's birth during the 90 days before notice of the hearing was served upon him, the rights of the putative father shall not be terminated except by proceedings in accordance with section 51(6) of this chapter or section 2 of chapter XIIA.

Thus, if subsection (2) does not apply, and if the putative father requests custody of the child at the hearing on a petition, the trial court shall proceed under subsection (1) to determine the fitness of the putative father and his ability to properly care for the child, and whether the child's best interests are served by granting the putative father custody. The factors to consider, evaluate, and determine when assessing the "best interests of the child" under the MAC are listed in MCL 710.22(g) as follows:

"Best interests of the adoptee" or "best interests of the child" means the sum total of the following factors to be considered, evaluated, and determined by the court to be applied to give the adoptee permanence at the earliest possible date:

(i) The love, affection, and other emotional ties existing between the adopting individual or individuals and the adoptee or, in the case of a hearing under[MCL 710.39], the putative father and the adoptee.

(ii) The capacity and disposition of the adopting individual or individuals or, in the case of a hearing under[MCL 710.39], the putative father to give the adoptee love, affection, and guidance, and to educate and create a milieu that fosters the religion, racial identity, and culture of the adoptee.

(iii) The capacity and disposition of the adopting individual or individuals or, in the case of a hearing under[MCL 710.39], the putative father, to provide the adoptee with food, clothing, education, permanence, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

(iv) The length of time the adoptee has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

(v) The permanence as a family unit of the proposed adoptive home, or, in the case of a hearing under[MCL 710.39], the home of the putative father.

(vi) The moral fitness of the adopting individual or individuals or, in the case of a hearing under [MCL 710.39], of the putative father.

(vii) The mental and physical health of the adopting individual or individuals or, in the case of a hearing under [MCL 710.39], of the putative father, and of the adoptee.

(viii) The home, school, and community record of the adoptee.

(ix) The reasonable preference of the adoptee, if the adoptee is 14 years of age or less and if the court considers the adoptee to be of sufficient age to express a preference.

(x) The ability and willingness of the adopting individual or individuals to adopt the adoptee's siblings.

(xi) Any other factor considered by the court to be relevant to a particular adoption proceeding, or to a putative father's request for child custody.

A petitioner in an action under the MAC "must prove by clear and convincing evidence that the termination of parental rights is warranted, so as to protect a parent's fundamental liberty interest in the custody of his or her child under the Fifth and Fourteenth Amendments." See *In re REV*, unpublished per curiam opinion of the Court of Appeals issued October 20, 2022 (Docket No. 360817), citing *In re Colon*, 144 Mich App 805, 813; 377 NW2d 321 (1985); see also *In re ALZ*, 247 Mich App 264, 272; 636 NW2d 284 (2001); *In re Newton*, 238 Mich App 486, 494; 606 NW2d 34 (1999); *In re Hill*, 221 Mich App 683, 691; 562 NW2d 254 (1997); *In re Simon*, 171 Mich App 443, 448; 431 NW2d 71 (1988), and noting "that all of these cases concerned stepparent adoptions under MCL 710.51(6)[, b]ut we see no reason why the standard would not equally apply in other Adoption-Code termination cases."[1]

Respondent argues that the trial court erred by determining that he did not come within the provisions of MCL 710.39(2), on the ground that he tried to have a relationship with the child, but Jamie and petitioners prevented him from doing so; attempted to file paperwork with the Friend of Court but these documents were rejected; unsuccessfully tried to obtain an affidavit of parentage from Jamie; and hired an attorney who became incarcerated and kept his retainer which prevented him from retaining another attorney to assist him. He also asserts that he provided substantial and regular support or care for the child, and provided support for Jamie during her pregnancy when he offered her the use of his truck and offered her money in exchange for signing an affidavit of parentage. These arguments lack merit.

In this case, respondent appeared at the hearing and requested custody of the child and attested that he was the child's biological father.[2] Respondent admitted during his testimony, however, that he did not have an established custodial relationship with the child. He had had no

---

[1] Unpublished opinions of the Court of Appeals are not binding upon this Court, but may be considered for their persuasive value. *Paris Meadows LLC v Kentwood*, 287 Mich App 136, 145 n 3; 783 NW2d 133 (2010); MCR 7.215(C)(1).

[2] Jamie and petitioners do not dispute respondent's claim to be the child's biological father.

contact with the child for nearly three years. He admitted that, except for perhaps the first few months, he had not provided substantial and regular support or care during Jamie's pregnancy. He further admitted that, after the child's birth, although he offered support at unspecified times, Jamie and petitioners rejected it and he did nothing legally to enable him to provide support for the child. Respondent also admitted that he had not provided substantial or regular support for the child during the 90 days before he received notice of the hearing. The record also indicates that petitioners commenced prior proceedings of which respondent apparently had knowledge.[3] Yet, despite knowing that his potential parental rights were likely at risk, respondent took no action respecting determination of his paternity to the child. This evidence established that MCL 710.39(2) did not apply in this case, and therefore, the trial court was required to proceed under MCL 710.39(1) to inquire as to respondent's fitness and ability to properly care for the child, and determine if granting custody to respondent served the child's best interests. *In re BKD*, 246 Mich App at 216. The trial court did not err in this regard.

Respondent contends that good intentions and attempts to establish a custodial environment are enough to permit a trial court to proceed under MCL 710.39(2). The requirements specified in MCL 710.39(2), however, plainly do not permit a trial court to proceed under subsection (2), no matter how many or sincere his failed attempts were. The trial court properly proceeded under MCL 710.39(1), and we affirm its decision in this respect.

The record indicates that the trial court correctly determined that MCL 710.39(2) did not apply and shifted its analysis to MCL 710.39(1). The trial court first considered respondent's fitness, and despite his criminal history and lack of credibility respecting aspects of his testimony, the court found "his fitness is adequate. Nothing all that great." The trial court did not err by giving respondent some leeway in this regard.

The trial court also considered whether respondent demonstrated his ability to care for the child and found that little evidence indicated his ability to so. The record reflects that the court noted that respondent had employment and rented a room at his parents' home which indicated some ability. The court, however, expressed concern that testimony indicated that respondent also had a history of domestic violence between him and Jamie. The trial court, however, did not consider dispositive the lack of evidence of respondent's ability to care for the child or the other matters that raised its concerns. The court concluded, "its not all that great but not all that bad either." We conclude that the trial court did not err in so deciding.

The trial court next endeavored to determine whether granting respondent custody served the child's best interests. That analysis must be undertaken by consideration of the best-interest factors set forth in MCL 710.22(g) which specifically provides that the factors are to be considered in case of a hearing under MCL 710.39. The record reflects that, in this case, the trial court did not cite, quote, or reference the statutory best-interest factors set forth in MCL 710.22(g) which are required for consideration in determining whether granting a putative father custody or terminating his parental rights serves the child's best interests. We can glean from the court's analysis stated in its ruling from the bench that it possibly considered some relevant statutory best-interest factors. For example, it is clear that the court found that the evidence established that

---

[3] Petitioners ended those efforts and chose instead to file the current petition.

respondent and the child had no emotional ties, there being no relationship between them. See MCL 710.22(g)(i). Further, the court found that the child had been in a loving home for approximately three years and a ward under a guardianship. See MCL 710.22(g)(iv).

Other than that, however, the trial court failed to consider or make findings regarding respondent's "capacity and disposition" "to give the [child] love, affection, and guidance, and to educate and create a milieu that fosters the religion, racial identity, and culture of the [child]," MCL 710.22(g)(ii), or "to provide the [child] with food, clothing, education, permanence, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs[,]" MCL 710.22(g)(iii). The trial court did not consider and make any finding regarding the home of respondent, MCL 710.22(g)(v), his moral fitness, MCL 710.22(g)(vi), or respondent's and the child's respective mental and physical health, MCL 710.22(g)(vii). The record also lacks specific consideration, evaluation, and determination by the trial court of the child's "home, school, and community record[,]" MCL 710.22(g)(viii).

The trial court's ruling indicates that it considered some other factors as permitted under MCL 710.22(g)(xi), but its lack of best-interest factor analysis and inadequate explanation on the record cannot support its ultimate decision to terminate respondent's parental rights to the child.

We hold when proceeding under MCL 710.39(1) the statute requires, *inter alia*, that the court "shall determine . . . the best interests of the child" and that to do so the court will, pursuant to MCL 710.22(g)(i) through (xi), consider, evaluate, and determine the factors set forth therein.

Accordingly, we vacate its order and remand for the court to conduct a best-interest factor analysis as prescribed under MCL 710.22(g), and set forth its factual findings and conclusions of law on the record to enable appellate review.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We retain jurisdiction.

/s/ James Robert Redford
/s/ Kirsten Frank Kelly
/s/ Mark T. Boonstra

# Court of Appeals, State of Michigan

## ORDER

In re BWJ Minor

Docket No. 363607

LC No. 22-001507-AF

Kirsten Frank Kelly
Presiding Judge

Mark T. Boonstra

James Robert Redford
Judges

Pursuant to the opinion issued concurrently with this order, this case is REMANDED for further proceedings consistent with the opinion of this Court. We retain jurisdiction.

Proceedings on remand in this matter shall commence within 56 days of the Clerk's certification of this order, and they shall be given priority on remand until they are concluded. As stated in the accompanying opinion, the trial court shall conduct a best-interest factor analysis as prescribed under MCL 710.22(g), and set forth its factual findings and conclusions of law on the record to enable appellate review. The proceedings on remand are limited to this issue.

The parties shall promptly file with this Court a copy of all papers filed on remand. Within seven days after entry, appellant shall file with this Court copies of all orders entered on remand.

The transcript of all proceedings on remand shall be prepared and filed within 21 days after completion of the proceedings.

_____
Presiding Judge

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

March 30, 2023
Date

_____
Chief Clerk