*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* BURGESS-EILF, Minor.

UNPUBLISHED
January 28, 2020

No. 349352
Bay Circuit Court
Family Division
LC No. 16-012159-NA

Before: CAMERON, P.J., and SHAPIRO and SWARTZLE, JJ.

PER CURIAM.

Respondent-mother, appeals as of right an order terminating her parental rights to her minor child, pursuant to MCL 712A.19b(3)(c)(*i*) (conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time), (g) (the parent failed to provide proper care and custody for the child), and (j) (there is a reasonable likelihood that the child will be harmed if returned to the parent's home).[1] We affirm.

The minor child has been diagnosed with autism and attention deficit hyperactivity disorder ("ADHD"). In June 2016, the minor child was removed from the home of her father because he was severely abusing alcohol, and he defecated on the floor of his apartment and told the minor child to clean it up. At the time of removal, respondent was living out of her car in Florida and had left the minor child in her father's care for the summer. Respondent did not return to Michigan upon learning of the minor child's removal from her father's home. At the time of removal, respondent was hospitalized in Florida for substance abuse and mental health problems. At the adjudication phase, respondent waived her right to a jury trial, and a bench trial was held. At the end of the bench trial, the trial court found that statutory grounds were satisfied to exercise jurisdiction over the minor child. The minor child was placed in the home of her great-aunt and great-grandparents (sometimes referred to collectively as "the relative caregivers").

---

[1] The trial court also terminated the parental rights of the minor child's father, but he is not a party to this appeal.

-1-

Following several dispositional hearings over the course of many months, during which respondent continued to live in Florida, the minor child was returned to the care of her father for a period of time. However, after the minor child's father relapsed and was found to have defecated on the floor of his apartment, the minor child again was placed with the relative caregivers. Throughout this period, respondent's participation in services, including treatment for substance abuse and mental health problems, was minimal or nonexistent, and her visitation with the minor child was inconsistent. Ultimately, a petition for termination of the parental rights of respondent and the minor child's father was filed. A termination hearing was held, and the trial court terminated the parental rights of both respondent and the minor child's father. This appeal followed.

Respondent first argues that she is entitled to reversal of the termination order because the trial court did not timely issue its opinion and order terminating her parental rights. We disagree.

"In general, issues that are raised, addressed, and decided by the trial court are preserved for appeal." *In re TK*, 306 Mich App 698, 703; 859 NW2d 208 (2014). Because respondent did not raise any issue below regarding the trial court's failure to comply with the timing requirements of MCL 712A.19b(1) and MCR 3.977(I)(1) for issuing its opinion and order, the issue would ordinarily not be preserved. See *id*. However, by its nature, this issue is one raised for the first time on appeal, and this Court has authority under MCR 7.216(A)(7) to review this issue as if it was preserved. This Court reviews de novo the interpretation and application of statutes and court rules. *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010).

MCL 712A.19b(1) provides, in relevant part, that "[t]he court shall issue an opinion or order regarding a petition for termination of parental rights within 70 days after the commencement of the initial hearing on the petition. The court's failure to issue an opinion within 70 days does not dismiss the petition." MCR 3.977(I)(1) states, in pertinent part: "If the court does not issue a decision on the record following hearing, it shall file its decision within 28 days after the taking of final proofs, but no later than 70 days after the commencement of the hearing to terminate parental rights." The trial court's opinion and order in this case was untimely under these provisions. The termination hearing commenced on October 8, 2018. Final proofs were taken on March 8, 2019, and the trial court issued its opinion and order terminating parental rights on April 23, 2019. Thus, the trial court erred by failing to comply with MCL 712A.19b(1) and MCR 3.977(I)(1).

However, the trial court's failure to issue its opinion and order in a timely manner does not entitle respondent to reversal of the order terminating her parental rights. "MCR 3.902(A) provides that MCR 2.613 governs limitations on the correction of errors in proceedings involving juveniles." *In re Utrera*, 281 Mich App 1, 14; 761 NW2d 253 (2008). MCR 2.613(A) provides:

> An error in the admission or the exclusion of evidence, an error in a ruling or order, or an error or defect in anything done or omitted by the court or by the parties is not ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take this action appears to the court inconsistent with substantial justice.

Further, MCL 712A.19b(1) expressly states that "[t]he court's failure to issue an opinion within 70 days does not dismiss the petition[,]" and this Court has held that a trial court's violation of the time limits set forth in the court rule does not require dismissal, *In re TC*, 251 Mich App 368, 370-371; 650 NW2d 698 (2002).[2] More specifically, in *In re TC*, the trial court failed to issue its final decision within 70 days after the commencement of the termination hearing. *Id.* at 369. This Court rejected the "respondent's argument that the silence of the court rule with regard to a sanction for violating the rule signals the Supreme Court's rejection of the express statement of the statute that violation of the time requirements will not result in a dismissal." *Id.* at 370. "There is no reason to suppose that the Supreme Court intended that the penalty for delay would be more delay." *Id.* at 371. Based on this, this Court held that reversal was not required under MCR 2.613(C).[3] *Id.*

Furthermore, we note that respondent has identified no prejudice that she has suffered as a result of the untimely issuance of the opinion and order terminating her parental rights. Respondent suggests that the untimely issuance of the opinion and order means that the decision was based on "stale testimony" and that she "should have had the opportunity to offer up-to-date testimony." However, respondent fails to identify any specific testimony at the termination hearing that was rendered "stale" by the time that the trial court issued its opinion and order and has offered no reason to believe that she could have provided new testimony that would alter the outcome. Thus, respondent has not established entitlement to reversal.

Respondent next argues that the trial court erred in failing to afford to her the right to a jury at the termination hearing. We disagree.

Whether there is a right to a jury at a termination hearing presents a question of law, and questions of law are reviewed de novo. *In re AMB*, 248 Mich App 144, 165; 640 NW2d 262 (2001). This Court reviews de novo the interpretation and application of statutes and court rules. *In re Mason*, 486 Mich at 152.

Our Supreme Court has explained:

> In Michigan, child protective proceedings comprise two phases: the adjudicative phase and the dispositional phase. Generally, a court determines whether it can take jurisdiction over the child in the first place during the adjudicative phase. Once the court has jurisdiction, it determines during the dispositional phase what course of action will ensure the child's safety and well-

---

[2] At the time of the issuance of *In re TC*, the provision now located at MCR 3.977(I)(1) was located at former MCR 5.974(G)(1). The current court rule is substantively identical to the former court rule at issue in *In re TC*. See *In re TC*, 251 Mich App at 369; see also *In re Utrera*, 281 Mich App at 13 n 4 (noting that, effective May 1, 2003, "MCR subchapter 5.900 was moved to new MCR subchapter 3.900, and MCR 3.977 corresponds to former MCR 5.974[]").

[3] We decline respondent's invitation to declare a conflict under MCR 7.215(J)(2).

being.  [*In re Sanders*, 495 Mich 394, 404; 852 NW2d 524 (2014) (citations omitted).]

In the adjudicative phase, the respondent parent is entitled to a jury trial.  MCR 3.911(A), (B); *In re Sanders*, 495 Mich at 405.  "Once a court assumes jurisdiction over a child, the parties enter the dispositional phase.  Unlike the adjudicative phase, . . . the rules of evidence do not apply [to the dispositional phase], MCR 3.973(E), and the respondent is not entitled to a jury determination of facts, MCR 3.911(A)."  *In re Sanders*, 495 Mich at 406.  Hence, there is no right to a jury at a termination hearing.  See also MCR 3.911(A) ("The right to a jury in a juvenile proceeding exists only at the trial."); *In re PAP*, 247 Mich App 148, 153; 640 NW2d 880 (2001) ("Parents may demand a jury determination of the facts in the adjudicative phase of child protective proceedings."); *In re Miller*, 178 Mich App 684, 686; 445 NW2d 168 (1989) (the right to a jury trial exists only in the adjudicative phase and not in the dispositional phase); *In re Colon*, 144 Mich App 805, 816; 377 NW2d 321 (1985) ("There is no right to a jury trial at the dispositional phase.").

Despite all this, respondent makes a confusing argument that MCL 712A.17(2) afforded her the right to a jury at the termination hearing.[4]  This argument fails.  As noted, our Supreme Court stated in *In re Sanders* that there is no right to a jury in the dispositional phase, of which a termination hearing is a part.  *In re Sanders*, 495 Mich at 406.  This Court is bound to follow decisions of our Supreme Court that have not been clearly overruled or superseded.  *Associated Builders & Contractors v City of Lansing*, 499 Mich 177, 191-193; 880 NW2d 765 (2016).  Further, MCL 712A.17(2) does not confer a right to a jury determination of a petition to terminate parental rights.  Examined in context, the term "hearing," as used in MCL 712A.17(2), refers to a hearing to determine whether a child falls within the court's jurisdiction.  This interpretation conforms to the extensive caselaw recognizing that the statutory scheme authorizes a jury trial only at the adjudicative phase of a child protection proceeding.  Respondent's argument that she had a right to a jury at the termination hearing therefore lacks merit.

Respondent next argues that the trial court clearly erred in finding that the relevant statutory grounds for termination of parental rights were proven by clear and convincing evidence.  We disagree.

---

[4] MCL 712A.17(2) provides:

Except as otherwise provided in this subsection, in a hearing other than a criminal trial under this chapter, a person interested in the hearing may demand a jury of 6 individuals, or the court, on its own motion, may order a jury of 6 individuals to try the case.  In a proceeding under section 2(h) of this chapter, a jury shall not be demanded or ordered on a supplemental petition alleging a violation of a personal protection order.  In a criminal trial, a jury may be demanded as provided by law.  The jury shall be summoned and impaneled in accordance with chapter 13 of the revised judicature act of 1961, 1961 PA 236, MCL 600.1300 to 600.1376, and, in the case of a criminal trial, as provided in chapter VIII of the code of criminal procedure, 1927 PA 175, MCL 768.1 to 768.36.

"To terminate parental rights, a trial court must find by clear and convincing evidence that at least one statutory ground under MCL 712A.19b(3) has been established." *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013). This Court reviews "for clear error a trial court's finding of whether a statutory ground for termination has been proven by clear and convincing evidence." *Id*. Clear error exists when the reviewing court is definitely and firmly convinced that a mistake was made. *Id*. Due regard is given "to the trial court's special opportunity to observe the witnesses." *Id*. (quotation marks and citation omitted).

Termination of parental rights is proper under MCL 712A.19b(3)(c)(*i*) if the court finds:

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age. . . .

This statutory ground is satisfied when the conditions that led to the adjudication continue to exist "despite time to make changes and the opportunity to take advantage of a variety of services." *In re White*, 303 Mich App 701, 710; 846 NW2d 61 (2014) (quotation marks and citation omitted). It is not enough for a respondent to participate in services; the respondent must also benefit from the services. *In re TK*, 306 Mich App at 711.

It is undisputed that more than 182 days had elapsed since the issuance of the initial disposition order. Among the conditions that led to the adjudication were respondent's substance abuse, her lack of stable housing, her mental health concerns, and her lack of parenting skills. Although respondent had improved her housing situation by living in the same apartment for an extended time, we conclude that she failed to participate in or benefit from services to address the other concerns.

Around the time of the minor child's removal in 2016, respondent had been hospitalized at Central Florida Behavioral Center for mental health concerns, including suicidal ideation and aggression. Respondent acknowledged that the 2016 discharge summary from Central Florida Behavioral Center indicated that respondent was bipolar, that she came in reporting self-harm, that she appeared pressured, that she had racing thoughts and an angry mood, that she frequently used "the F word," and that she had recently used cocaine. Upon discharge from that facility, it was recommended that she obtain mental health therapy, and the hospital provided information regarding where she could attend therapy. Also, a psychological evaluation that respondent underwent indicated that respondent could benefit from individual counseling to address transient depressive symptoms. Despite these recommendations, respondent failed to obtain any mental health therapy and claimed that she did not need any mental health services. Respondent later obtained another psychological evaluation, which did not recommend mental health services. However, the Department of Health and Human Services ("DHHS") caseworker, Shannon Clifford, testified that the report was based on respondent's self-reporting with the goal of getting a report saying that she did not need mental health services. In short, respondent failed

to participate in or benefit from mental health services or even to acknowledge that she needed such services.

There was also evidence that respondent failed to participate in or benefit from services to address her substance abuse issues. Respondent had a history of using cocaine, heroin, and marijuana, including positive tests for cocaine and marijuana on one of the dates of the bench trial of the adjudication in this case. Although respondent participated in a program called "moral reconation therapy" at Seminole Addiction Treatment Services, that therapy did not address substance abuse or mental health issues specifically. Also, respondent reported that she did not attend the sessions but merely reviewed a workbook at home and then sometimes reported back to the therapist. Clifford had no basis to conclude that respondent had benefited from this service. Clifford testified that this workbook course did not constitute significant progress in rectifying the substance abuse problem, and respondent had done nothing else to address her substance abuse problem. In fact, she entirely denied that she had a substance abuse problem. Respondent also underwent drug screens in both Michigan and Florida. Although respondent had not tested positive since May 2017, Clifford noted that respondent's drug screens in Michigan were always scheduled rather than random and that respondent thus had plenty of time to prepare for the drug screens. Clifford once tried to arrange a random screen when respondent was scheduled to visit the minor child. However, when respondent found out that Clifford was going to be at the visit, respondent arrived a couple of hours after the visit was scheduled to start and after Clifford had left. Although respondent claimed that she had attended Alcoholics Anonymous or Narcotics Anonymous, she never provided documentation to verify this claim.

Respondent also failed to make any improvement in her parenting skills. She did not participate in any parenting education program. Clifford testified that respondent did not think that she needed any services to address her parenting skills. Clifford discussed with respondent the basic idea that she should be in contact with the minor child's service providers, including her teachers, autism therapist, and autism case manager. Although respondent was given contact information for all of the service providers, she had made virtually no effort to contact any of the service providers to get an update on the minor child's needs or what the minor child's services entailed. Respondent participated by telephone in some group meetings that were set up by the minor child's autism case manager, but respondent did not reach out to the minor child's teachers or autism therapist "on a consistent basis to stay up-to-date with what her current needs are at that time, and how they're addressing them[.]" During her visits to Michigan, respondent was told that she had permission to observe the minor child's autism therapy sessions, but respondent did not go to any of the sessions. Respondent also failed to attend any of the minor child's doctor appointments. Respondent sometimes went several months without visiting the minor child, and she was often distracted by her cellular telephone or computer during supervised visits. Respondent was not consistent in calling the minor child, and respondent made various excuses when she failed to call. Clifford testified that respondent never reached a point at which unsupervised visits with the minor child would be allowed given respondent's failure to take the time to learn about the minor child's needs or how those needs are being addressed through services. Also, respondent lacked stability. In meetings with Clifford, respondent would "go from irate and yelling, to calm, and everything's great."

Respondent often failed to make visiting the minor child a priority even when respondent was in Michigan. For example, respondent admitted to lying under oath at the termination hearing when she had earlier denied that she was in Bay City, Michigan, during the final weekend of September 2018 and had failed to visit the minor child despite not having seen her for several months. Respondent made this admission only after photographs and video from Facebook were presented showing that she was in the area filming a movie that weekend.

Moreover, although respondent chose to live in Florida rather than Michigan, and the DHHS could not pay for out-of-state services, the DHHS nonetheless attempted to assist respondent in finding service providers in her area and to help respondent find ways to pay for those services. For example, Clifford provided respondent with a list of resources in her area, including an internet link to a Florida agency website which could assist respondent in finding the services that she needed locally. Clifford continually urged respondent to apply for a Florida identification ("ID") card so that she could apply for insurance to perhaps help pay for some of her services, but it took the better part of a year for respondent to even apply for a Florida ID card. Moreover, by March 2018, respondent was claiming that she had thousands of dollars saved, and it was thus unclear why respondent could not afford to pay for the services that she was directed to complete. Clifford testified that respondent "hasn't engaged, or benefited from services, and you can't really benefit from services if you're not even gonna admit there's a need for them in the first place."

By the time that the termination hearing was completed, it had been 33 months since the minor child was removed from her parents' care, comprising roughly a quarter of the minor child's life so far. There was extensive testimony that the minor child needed permanence, particularly in light of her autism diagnosis. Respondent was afforded more than enough time to make changes and ample opportunities to take part in services. *In re White*, 303 Mich App at 710. Nonetheless, respondent failed to participate in or benefit from the services that were required. Consequently, we conclude that the trial court did not clearly err in finding by clear and convincing evidence that the conditions that led to the adjudication continued to exist and that there was no reasonable likelihood that the conditions would be rectified within a reasonable time considering the minor child's age.

Therefore, we conclude that the trial court did not clearly err in determining that the ground for termination in MCL 712A.19b(3)(c)(*i*) was satisfied. Because only one statutory ground need be proven to terminate a respondent's parental rights, *In re Laster*, 303 Mich App 485, 495; 845 NW2d 540 (2013), this Court could decline to address the trial court's determination that statutory grounds for termination also existed under MCL 712A.19b(3)(g) and (j). We will nonetheless address those additional statutory grounds.

Under MCL 712A.19b(3)(g), the trial court may terminate parental rights if the court finds, by clear and convincing evidence, that "[t]he parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age." A parent's failure to comply with a case service plan is evidence of the parent's failure to provide proper care and custody for the child. *In re JK*, 468 Mich 202, 214; 661 NW2d 216 (2003). As discussed earlier, respondent failed to participate in or benefit from the services that were required, including treatment for her substance abuse

and mental health problems. She also failed to improve her parenting skills. This evidences respondent's failure to provide proper care and custody for the minor child. Moreover, given the length of time the case had been pending and the minor child's need for permanence, there was no reasonable expectation that respondent would be able to provide proper care and custody within a reasonable time considering the minor child's age. The trial court did not clearly err in finding by clear and convincing evidence that the ground for termination in MCL 712A.19b(3)(g) was satisfied.

Under MCL 712A.19b(3)(j), the trial court may terminate parental rights if the court finds, by clear and convincing evidence, that "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent." A court may consider a parent's failure to comply with a case service plan in assessing whether harm may result to the child if returned to the parent's care. *In re Mason*, 486 Mich at 159 n 9. As discussed, respondent failed to participate in or benefit from the services that were required of her, including treatment for substance abuse and mental health problems. She also failed to improve her parenting skills. Of particular concern with respect to this statutory ground is that, as Clifford noted, respondent failed to learn about the minor child's needs or how those needs were being addressed through services for her autism and ADHD diagnoses. Given her special needs, the minor child required constant supervision to keep her safe. Clifford noted that the minor child needs a lot of "attention to her needs, and her routine, and her structure, and her schedule, so she can be successful, and continue to thrive." The school that respondent found for the minor child in Florida did not have a specific program that would address the minor child's special needs, and the school had a year-long waiting list for admission. The minor child was making great progress at the school she was attending in Michigan. The trial court did not clearly err in finding by clear and convincing evidence that the ground for termination in MCL 712A.19b(3)(j) was satisfied.

Respondent next argues that the trial court clearly erred in finding by a preponderance of the evidence that termination of her parental rights was in the best interests of the minor child. We disagree.

"Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012). "[T]he preponderance of the evidence standard applies to the best-interest determination." *In re Moss*, 301 Mich App at 83. This Court reviews for clear error the trial court's determination regarding the child's best interests. *In re White*, 303 Mich App at 713.

The trial court should weigh all available evidence when determining the child's best interests. *Id.*

> To determine whether termination of parental rights is in a child's best interests, the court should consider a wide variety of factors that may include the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's

-8-

visitation history with the child, the children's well-being while in care, and the possibility of adoption. [*Id.* at 713-714 (quotation marks and citation omitted).]

Also, a child's placement with relatives weighs against termination and thus constitutes "a factor to be considered in determining whether termination is in the child's best interests." *In re Olive/Metts*, 297 Mich App at 43, citing *In re Mason*, 486 Mich at 164.

Although respondent and the minor child had a bond, Clifford testified that the minor child saw her great-aunt, one of the relative caregivers, as a parental authority figure. According to Clifford, the minor child did not see respondent in that way. Moreover, as discussed earlier, respondent failed to participate in and benefit from the services required of her and failed to improve her parenting ability. Her visitation with the minor child was inconsistent and respondent would sometimes go months without visiting the minor child. Respondent was sometimes distracted by her cellular telephone or computer during visits. Respondent had failed to learn about the services that were being provided to the minor child for her autism diagnosis, and the school respondent found for the minor child in Florida lacked a specific program that would address the minor child's special needs.

Although a relative placement weighs against termination, *In re Olive/Metts*, 297 Mich App at 43, citing *In re Mason*, 486 Mich at 164, there was extensive testimony that adoption was preferable to a guardianship in this case. In light of her special needs, the minor child had a particular need for permanence, structure, consistency, and stability. This case had been pending for 33 months at the time that the termination hearing ended, respondent still had not adequately participated in or benefited from services. The minor child was thriving in her current placement with relatives, who provided a stable and supportive home environment and who wished to adopt her. Given all of these considerations, we conclude that the trial court did not clearly err in finding by a preponderance of the evidence that termination of respondent's parental rights was in the minor child's best interests.

Respondent next argues that the DHHS failed to make reasonable efforts toward reunification. We disagree.

To preserve a claim that the DHHS failed to make reasonable efforts at reunification, a respondent must object or indicate in the trial court that the services provided were somehow inadequate. *In re Frey*, 297 Mich App 242, 247; 824 NW2d 569 (2012). "The time for asserting the need for accommodation in services is when the court adopts a service plan[.]" *Id.* (quotation marks and citation omitted). Respondent's brief on appeal does not identify any such objection or argument that she made below regarding the purported inadequacy of the services provided to her, and we have found nothing in the record suggesting that she preserved the issue. Therefore, this issue is unpreserved.

Unpreserved issues are reviewed for plain error affecting substantial rights. *In re TK*, 306 Mich App at 703. "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "Generally, an error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *In re Utrera*, 281 Mich App at 9, citing *Carines*, 460 Mich at 763.

"Generally, reasonable efforts must be made to reunite the parent and children unless certain aggravating circumstances exist." *In re Moss*, 301 Mich App at 90-91. "As part of these reasonable efforts, the [DHHS] must create a service plan outlining the steps that both it and the parent will take to rectify the issues that led to court involvement and to achieve reunification." *In re Hicks/Brown*, 500 Mich 79, 85-86; 893 NW2d 637 (2017). "While the [DHHS] has a responsibility to expend reasonable efforts to provide services to secure reunification, there exists a commensurate responsibility on the part of respondents to participate in the services that are offered." *In re Frey*, 297 Mich App at 248. A respondent must both participate in and benefit from the services that are provided. *Id.*

Respondent argues that the DHHS failed to make reasonable efforts to achieve reunification. Respondent suggests that, because she lives in Florida, she is somehow akin to an incarcerated parent who has been deprived of the ability to participate in services or to personally care for the child. Respondent references our Supreme Court's holding that "[t]he mere present inability to personally care for one's children as a result of incarceration does not constitute grounds for termination." *In re Mason*, 486 Mich at 160. We conclude that respondent's argument is unavailing for multiple reasons.

Respondent fails to identify precisely how the services offered to her were unreasonable or what additional services should have been offered. Moreover, the record demonstrates that respondent had ample opportunities to participate in services. As discussed, even though the DHHS could not pay for out-of-state services, the DHHS attempted to assist respondent in finding service providers in her area and to help respondent find ways to pay for those services, such as by getting insurance. Also, by March 2018, respondent was claiming that she had thousands of dollars saved, and it was thus unclear why respondent could not afford to pay for the services that she was directed to complete. Respondent failed to participate in services and had ample opportunities to participate in parenting time with the minor child but often failed to utilize that time. When she attended supervised visitation, respondent was often distracted by her cellular telephone or her computer. Respondent also made virtually no effort to communicate with the minor child's teachers and autism specialists, despite being urged to do so. Indeed, respondent's failure to learn about how the minor child's special needs were being addressed contributed to respondent's failure to obtain unsupervised parenting time.

In sum, respondent's claim that the DHHS failed to make reasonable efforts to achieve reunification is without merit. Contrary to respondent's suggestion, her parental rights were not terminated because she lived in Florida. Rather, her parental rights were terminated because the statutory grounds for termination were satisfied given her failure to participate in or benefit from the services that were ordered and because termination was in the minor child's best interests.

Affirmed.

/s/ Thomas C. Cameron
/s/ Douglas B. Shapiro
/s/ Brock A. Swartzle